THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID KRUEGER, Defendant-Appellant.

Second District   No. 2—87—0193

Opinion filed November 23, 1988.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Virginia M. Ashley, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, David Krueger, was charged by indictment, along with Michael Migliore, with one count of attempted murder. Migliore was tried separately, found guilty, and sentenced to a 10-year term of imprisonment. Migliore's conviction and sentence were affirmed by this court in *People v. Migliore* (1988), 170 Ill. App. 3d 581. Defendant was found guilty after a jury trial and also was sentenced to 10 years' imprisonment. On appeal, defendant argues that the jury should have been instructed as to the lesser offense of aggravated assault. We agree, so we reverse and remand for a new trial.

The indictment returned against defendant and Migliore charged

that they, with the intent to murder Dominic Iasparro, took a substantial step toward the commission of that offense by firing several gunshots from close range at Iasparro's house knowing him to be present inside. Iasparro was a Rockford police officer who lived one block east on Lundvall Avenue in Rockford from an attorney named William Knight. Knight represented a party in a civil lawsuit against Migliore and earlier that day had attended a preliminary hearing concerning that case. Iasparro was also present in the courtroom on another unrelated matter.

Defendant testified at trial that Migliore was upset over some remarks that Knight had made that day. Defendant testified that he and Migliore picked up defendant's wife for her lunch break from work at about 9 p.m. and went to a tavern. Both men had several drinks, and after defendant's wife returned to work, they went to another bar and drank some more. At the second bar, Migliore mentioned a problem he had with Knight, saying that Knight had threatened him. When they left the second bar in defendant's car, Migliore pulled out a page from a phone book with Knight's address and said he wanted to go there. After stopping for directions, they found Lundvall but could not find Knight's address.

Defendant testified that at about 10 p.m., after driving up and down the street several times, he stopped the car and got out to urinate. Migliore also got out and started looking for addresses on nearby houses. Migliore returned to the car and told defendant, "This is him, let's go." Defendant drove away thinking Migliore was referring to Knight.

The testimony of Iasparro and one of his neighbors confirmed that a car with a loud muffler had driven down the street several times before stopping in front of Iasparro's house. The neighbor saw the passenger get out, go up to the house, return to the car and say, "This is the guy. Let's go." Iasparro testified that he was looking out his door as a man approached his house. He turned on his porch light and came face to face with the man, who turned and ran back to the car. Iasparro said he had no doubt that the man who approached his house was defendant, not Migliore.

At about 11:40 that night, Iasparro was watching television in his living room. Sheer drapes were closed across the front window, and a light was on in the attached dining room. As Iasparro stood up to change the channel, he heard a car which sounded like the one he had heard earlier. He then heard a gunshot followed by a slight pause and then six or seven more shots in rapid succession, some of which sounded like they had hit the house. He dropped to the floor and

crawled to the adjoining bedroom where his wife and daughter were. His son came downstairs and Iasparro had him get down on the floor too. After Iasparro called the police, he got a gun and went outside, but the car had left.

The evidence showed that 7 to 10 bullets had hit the front of the house. One hit inches from the window in the bedroom and one hit high on the front door. Several nine millimeter bullet casings were found in the street in front of the house.

Later that night, defendant's car was stopped, and two nine-millimeter bullet casings were found on the right rear floorboard. A disassembled shotgun was recovered from the backseat, and defendant and Migliore were arrested. Tests showed that the shells found in the car matched those found in front of Iasparro's house and that all had been fired from a gun purchased by Migliore.

Defendant gave a statement in which he admitted driving the car at the time of the shooting, but he stated that he did not know Migliore was going to shoot at the house or that Migliore even had the gun with him. He testified that after they left the first time, Migliore asked him to drive by once more. Migliore told defendant to slow down as they came to the house, pulled the gun from his right side, and began firing. Defendant then sped off.

Defendant testified that he was very upset and was not sure what to do. He first went to another bar and had some more drinks. They then went to defendant's mother's house, where defendant gave the gun used in the shooting to his brother for safekeeping. He then took a shotgun from the garage and gave it to Migliore because, he said, Migliore thought he still needed protection from Knight. As defendant and Migliore pulled away from his mother's house, they were stopped by the police for driving without headlights. The officer saw the shotgun in the backseat, and they were arrested. The nine-millimeter pistol was eventually recovered from where defendant's brother had buried it in the backyard.

Defendant offered jury instructions pertaining to the offense of aggravated assault, but they were refused by the trial court. Defendant was found guilty by the jury of attempted murder. He was subsequently sentenced to 10 years' imprisonment.

Defendant contends that the trial court erred in refusing defendant's proposed aggravated assault instructions. He argues that, considering the indictment and the evidence presented in this case, aggravated assault is a lesser included offense of attempted murder. He maintains that the jury could legitimately have concluded that the gunshots were fired at the house with the intent of only placing the

occupants in apprehension of receiving a battery rather than with the intent to kill. The State responds that the instructions were correctly refused because aggravated assault is not a lesser included offense of attempted murder under either the statutory definitions of the crimes or the indictment and evidence in this case.

■ It is clear that a defendant may be entitled to have the jury instructed on a less serious offense that is included in the one with which he is charged. (*People v. Bryant* (1986), 113 Ill. 2d 497, 502, citing *Beck v. Alabama* (1980), 447 U.S. 625, 636-37, 65 L. Ed. 2d 392, 401-02, 100 S. Ct. 2382, 2388-89.) The *Bryant* court stated the reason for this is that an instruction on a lesser offense provides an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense. (*Bryant*, 113 Ill. 2d at 502, citing *Keeble v. United States* (1973), 412 U.S. 205, 212-13, 36 L. Ed. 2d 844, 850, 93 S. Ct. 1993, 1997-98.) As the *Bryant* court noted, however, what a lesser included offense actually is is not always so clear. *Bryant*, 113 Ill. 2d at 502.

Earlier cases looked to the abstract statutory definitions of the crimes involved, finding a crime to be a lesser included offense only if the greater offense included every element of the alleged lesser included offense. (*People v. Tiller* (1978), 61 Ill. App. 3d 785, 795.) Defendant concedes that under this analysis, aggravated assault would not be a lesser included offense of attempted murder. As the *Tiller* court reasoned, an element of assault is the placing of the victim in reasonable apprehension of receiving a battery while attempted murder may be committed without regard to the state of mind of the victim; thus under an abstract statutory analysis, attempted murder does not include every element of aggravated assault. *Tiller*, 61 Ill. App. 3d at 795.

In more recent cases though, our supreme court has gone beyond abstract statutory definitions and looked to both the language used in the charging instruments and the evidence presented at trial. (*Bryant*, 113 Ill. 2d at 503; *People v. Dace* (1984), 104 Ill. 2d 96, 102-03.) This approach led the *Bryant* court to hold that the jury should have been instructed as to the crime of criminal damage to property as a lesser included offense of attempted burglary where the indictment alleged that the substantial step toward completion of burglary was the breaking of a window and the evidence adduced at trial would have supported a criminal damage conviction. (*Bryant*, 113 Ill. 2d at 504-05.) This result was reached despite the State's claim that

the charging instrument failed to set forth all of the elements of the lesser offense since the necessary mental state for the lesser offense was not specified. (*Bryant*, 113 Ill. 2d at 504.) The court determined that the failure of the indictment to expressly allege all the elements of the lesser offense was not fatal where, to the extent that the lesser offense must have a broad foundation in the instrument charging the greater, the indictment set out the main outline of the lesser offense proposed by the defendant. (*Bryant*, 113 Ill. 2d at 505.) The court concluded that the evidence presented at trial could have rationally sustained a conviction for the lesser offense and an acquittal on the greater. *Bryant*, 113 Ill. 2d at 506.

■ Here, we believe that the evidence presented at trial could support a conviction for aggravated assault. Although the victim was purportedly visible through the sheer drapes on his living room window, no shots were actually fired through that window. While this might have been due to Migliore's poor aim or level of intoxication, it could also be viewed as being due to a lack of intent to kill. The bullet casings found in the street were stretched in a line indicating that the car was still moving as the shots were fired. Pictures of the victim's house show trees partially blocking the view from the street, which might lead to the inference that if Migliore had intended to kill the victim, he would have gone closer to the house and taken better aim. The indictment itself alleges that the shots were fired at Iasparro's residence rather than at anyone inside. We do not mean to suggest that attempted murder was not proved beyond a reasonable doubt, but only to demonstrate that the evidence could support a finding that the shots were intended to scare the victim rather than kill him.

We also believe the evidence would support a finding that the victim was put in apprehension of an imminent battery. He heard one shot, a pause, and then several others. Due to the number of shots, it cannot be said that the crime was committed before the victim felt apprehension. Although the indictment here did not expressly allege the apprehension of battery element of aggravated assault, this is not necessarily fatal because it did set out the main outline of the lesser offense proposed by defendant. (See *Bryant*, 113 Ill. 2d at 505.) Since the evidence presented at trial could have rationally sustained a conviction for the lesser offense and an acquittal on the greater (*Bryant*, 113 Ill. 2d at 506), the lesser included offense instructions were warranted. A different result is not required by defense counsel's argument to the jury that Migliore meant to "off" Knight, because the requested aggravated assault instructions had already been refused by that time.

We conclude by reiterating that the grounds for determining whether a particular offense is included in another are not always clear. In this instance, however, we believe the requested aggravated assault instructions should have been given. The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

LINDBERG, P.J., and WOODWARD, J., concur.