THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES WALKER, Defendant-Appellant.

First District (4th Division)   No. 1—92—1470

Opinion filed December 30, 1993.

Maria A. Harrigan, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Bette Plass, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HOFFMAN delivered the opinion of the court:

A jury convicted defendant, Charles Walker, of attempted first-degree murder and the trial court sentenced him to 18 years'

imprisonment. He now appeals from his conviction and sentence, contending (1) the trial court deprived him of a fair trial by refusing to tender a jury instruction for the lesser-included offense of aggravated assault; (2) prosecutorial remarks during closing argument amounted to reversible error; and (3) his sentence was an abuse of discretion. We affirm.

Defendant was charged by indictment with aggravated battery and attempted murder resulting from his act of firing a loaded revolver at Officer Lloyd Gray. At trial, Jacques Lumpkins testified that at approximately 7:30 p.m. on October 15, 1990, he was in the living room of his second-floor apartment near 61st and Hermitage Streets when he heard a disturbance across the street. When he looked out of his window, he saw defendant and another man on the street engaged in an argument. Defendant told the other man "I thought I told you not to come in my neighborhood no more *** I told you the next time you come over here I was going to pop it." Defendant then retrieved a pistol from his pocket and began shooting the other man. Lumpkins indicated that shortly after the first shot was fired, a car arrived on the scene and a man from the passenger's side stepped out and yelled "hold it." Lumpkins heard several more shots and then saw defendant shoot at a man whom Lumpkins identified as Officer Lloyd Gray. Lumpkins testified that when defendant shot at Gray, defendant was standing up and his gun was pointed at the area of Gray's head and chest.

Gray testified that on the night of the occurrence he and his partner, Bernard Triche, were on patrol when they heard gunfire ahead of them. Gray stated that they proceeded in the direction of the shooting and subsequently came upon defendant, who had his back to their car and was firing a gun. Gray exited the passenger's side of the police car, drew his gun and walked towards defendant. Defendant fired four shots and then turned around towards Gray and ran past him. Gray announced his office and ordered defendant to drop his weapon, but defendant continued running with the gun in his hand. Gray testified that he began chasing defendant, repeating his order to stop. He was able to catch up to defendant and trip him while running alongside of him. Defendant fell forward to the ground still holding his gun, while Gray again ordered him to drop it; then in one motion, defendant rolled onto his back, pointed his revolver in the vicinity of Gray's head and chest, and fired at him from a distance of about five feet. Gray stated that he backed away from defendant towards the street and returned one shot, and defendant then stood

up and fired a second shot at Gray. Gray then entered a car which had driven up alongside of him while Triche returned fire at defendant. Defendant grabbed his face and yelled that he was hit, but was subsequently able to escape, and Gray and Triche went after him.

Bernard Triche's testimony corroborated Gray's as to events surrounding defendant's attempt to shoot Gray. Triche stated that when defendant shot at Gray while on the ground, Gray was hovering over defendant at a distance of about five feet. Defendant's gun was pointed at Gray's chest. When defendant fired the second shot, he was standing about 10 feet from Gray because Gray had taken several steps backward.

After defendant fled, Triche sent communications over his police radio describing defendant and the occurrence in detail. Officer Carl Riggenbach testified that he and his partner received these communications and drove to the vicinity where defendant had reportedly fled. Riggenbach eventually apprehended defendant when he stepped out in front of their car. Riggenbach stated that when Gray and Triche subsequently arrived on the scene, Gray identified defendant as the man who had shot at him.

Riggenbach testified that he removed gloves from defendant's hands and submitted them to the crime laboratory. Robert Berk, a criminalist who examined the gloves, testified that in his opinion, the gloves had been in the presence of gunshot residue. The testimony of Riggenbach, investigating Officer Joseph Bell, and evidence technician James Shader established that a .357 revolver was recovered in a location where defendant was known to have fled during his attempt to escape Gray and Triche. The weapon contained six rounds of ammunition, all of which had been recently fired.

Defendant testified that at the time of the occurrence he was at the intersection of 60th and Hermitage Streets walking home from a friend's house. He walked past a group of boys who exchanged words and then began shooting at one another. Defendant became caught in the cross fire and was shot in the face when he tried to escape. He fell to the ground and was then shot in the ankle. Defendant stated that he then began running, but saw no police until he "fell onto" the hood of a police car. The officers got out of the car and asked defendant what had happened and then called an ambulance. Defendant testified that while he was awaiting the ambulance, an officer came "out of nowhere" and accused defendant of shooting at him. Defendant was later taken to the hospital. On cross-examination, defendant denied having a gun that evening. Although defendant admitted he was wearing gloves and that those gloves were later taken by police, he claimed he did not know how they became covered

with gun residue. Defendant denied telling police at the hospital that he was an "enforcer" for a local street gang; however, this was contradicted by a State rebuttal witness, Officer Jerome Rusnak, who testified that defendant had informed him that he was such an enforcer, and that an enforcer provided security and protection.

At the close of the evidence, the State declared *nolle prosequi* as to the aggravated assault charge and proceeded on the charge of attempted murder. Defendant's request that the jury be instructed on aggravated assault was declined by the trial court. Following arguments, the jury found defendant guilty of the attempted murder of Gray. The instant appeal followed.

Defendant's first contention is that he was deprived of a fair trial by the court's refusal to tender the instruction for aggravated assault, which he maintains is a lesser-included offense of attempted murder.

Under certain circumstances, a defendant is entitled to have the jury instructed on an offense which is a lesser-included offense of that with which he is charged. (*People v. Bryant* (1986), 113 Ill. 2d 497, 502, 499 N.E.2d 413.) This is true even where the defense's theory at trial is inconsistent with the possibility that he is guilty of the lesser offense. (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 525, 281 N.E.2d 389; see also *People v. Tiller* (1978), 61 Ill. App. 3d 785, 790, 378 N.E.2d 282.) In determining whether an offense is lesser-included so as to permit an instruction on it, prior cases have looked to the statutory definitions of the crimes involved and have held that an offense is lesser-included only if the greater offense contained every element of the lesser offense. (*People v. Krueger* (1988), 176 Ill. App. 3d 625, 628, 531 N.E.2d 396, citing *Tiller*, 61 Ill. App. 3d at 795.) In more recent cases, however, the supreme court has expanded this analysis to include the language used in the charging instruments as well as the evidence presented at trial. (*Krueger*, 176 Ill. App. 3d at 628, citing *Bryant*, 113 Ill. 2d at 503.) Moreover, the indictment need not always contain all the specific elements of the lesser offense to warrant an instruction on that offense; rather, it is sufficient if it encompasses the "main outline" of the lesser offense. (*Bryant*, 113 Ill. 2d at 505.) Thus, the relevant inquiry under *Bryant* is whether the elements of the lesser offense are, in a broad sense, included in the offense charged, and the evidence at trial is sufficient to permit the jury rationally to find defendant guilty of the lesser offense and acquit him of the greater. (*Bryant*, 113 Ill. 2d at 507; *People v. Kimball* (1993), 243 Ill. App. 3d 1096, 1098, 614 N.E.2d 273.) Conversely, where the evidence would preclude a finding of guilty on the lesser offense, the instruction need not be given. *Bryant*, 113 Ill. 2d at 507; *People v. Taylor* (1992), 233 Ill. App. 3d 461, 464, 599 N.E.2d 174.

A person commits aggravated assault when, while armed with a deadly weapon, he engages in conduct which places another in reasonable apprehension of receiving a battery. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—1, 12—2.) Defendant argues that an instruction on this offense was warranted because the jury could have found that he shot at Gray, not with the intention of killing him, but merely to distract and scare the officers in order to escape. The State responds that the evidence in this case could not rationally permit a conclusion that defendant wanted to scare Gray, but only that he intended to kill him. (See *Tiller*, 61 Ill. App. 3d at 795.) We agree with the State's position.

■ The testimony of Gray, Triche, and Lumpkins established that when Gray cornered defendant on the ground and ordered him to drop his weapon, defendant turned and shot directly at Gray's face and chest area from a distance of about five feet. After defendant stood up, he fired at Gray's face again even though Gray was backing away from him. The act of firing a loaded weapon at a victim clearly manifests an intention to kill (*People v. Mitchell* (1991), 209 Ill. App. 3d 562, 569, 568 N.E.2d 292; see also *People v. Gonzales* (1968), 40 Ill. 2d 233, 239 N.E.2d 783; *Tiller*, 61 Ill. App. 3d at 794), especially from as close a distance as in the case at bar. Accordingly, the court properly declined to give the aggravated assault instruction.

The cases relied upon by defendant, *Krueger* (176 Ill. App. 3d 625) and *People v. Ross* (1992), 226 Ill. App. 3d 392, 589 N.E.2d 854, are distinguishable from the case at bar. In both *Krueger* and *Ross*, this court found error in the failure to instruct on the uncharged offense of aggravated assault along with the instruction on attempted murder; however, the evidence in both cases clearly suggested that the defendant wanted only to scare the victim or place him in apprehension of a battery. In *Krueger*, where the defendant fired at the victim's house from a car on the street, the court noted that although the victim was allegedly visible through the sheer drapes of his living room, the defendant fired no shots through that window; instead, the evidence suggested that he merely intended to hit defendant's residence as he drove by, in an effort to scare him. (*Krueger*, 176 Ill. App. 3d at 629.) In *Ross*, the defendant turned and pointed a gun at a police officer while the defendant was "still moving forward." However, there was no evidence that he actually fired any shots at the officer. *Ross*, 226 Ill. App. 3d 392.

The case at bar is more analogous to *People v. Kimball* (243 Ill. App. 3d 1096, 614 N.E.2d 273), where the court found that the evidence could not support an aggravated assault conviction. The court there distinguished *Krueger* and *Ross* because the defendant in *Kim-*

*ball* had fired at the victim's face rather than merely in his general direction. (*Kimball*, 243 Ill. App. 3d at 1099.) The case at bar can be distinguished for the same reason.

Moreover, the indictment in this case, like that in *Kimball*, charged the defendant with attempting to kill Gray by "shooting him with a gun," whereas the indictment in *Ross* charged the defendant with merely aiming the gun. (*Kimball*, 243 Ill. App. 3d at 1099.) Accordingly, there was no error on this point.

Defendant next contends that the prosecutor's references in closing argument to Gray's and Triche's status as police officers, and to their lifelong ambition to be police officers, assumed facts not in evidence and were an improper attempt to appeal to the jury's respect for police officers and the inherent dangers in their jobs. Defendant acknowledges that he waived this argument by not objecting to these comments at trial and in his post-trial motion (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E. 2d 1124), but he urges that the matter be reviewed as plain error under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).

Where a defendant has failed to preserve an issue regarding improper closing comments, plain error applies if the remarks were "so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process." *People v. Jones* (1988), 123 Ill. 2d 387, 410, 528 N.E.2d 648.

Attorneys are allowed great latitude in closing arguments, and even comments which may be inflammatory do not warrant a new trial unless they resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 175, 514 N.E.2d 970; *People v. Jenkins* (1989), 190 Ill. App. 3d 115, 135, 545 N.E.2d 986.) In reviewing allegations of prosecutorial misconduct, the closing arguments of both sides must be examined in their entirety and the challenged comments placed in context. (*People v. Nemke* (1970), 46 Ill. 2d 49, 59, 263 N.E.2d 97; see also *People v. Witted* (1979), 79 Ill. App. 3d 156, 165, 398 N.E.2d 68.) Closing comments are not error if they are based upon facts in the record or reasonable inferences drawn from those facts. *People v. Bryant* (1983), 94 Ill. 2d 514, 524, 447 N.E.2d 301.

A prosecutor may properly comment upon the "evil results of crime and the benefits of a fearless administration of the law" (*People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739), as well as the ill effects of crime upon the community. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 288, 393 N.E.2d 1098.) In *Jenkins*, this court held that comments contrasting the defendant with the victim, who was a

police officer, constituted proper commentary on the law and on the administration of justice. The prosecutor in *Jenkins* referred to the defendant as having no regard for the truth or the public, while emphasizing that the officer was a " 'decorated eighteen year veteran' " who dedicated his life to serving and protecting the public. *Jenkins*, 190 Ill. App. 3d at 136.

In the case at bar, the alleged inflammatory comments were as follows:

> "Now, guys like [Gray] and [Triche] probably want to be police officers all their lives. Ever since they were little kids, ask any little boy what do you want to be when you grow up, and they'll tell you, policeman, fireman, doctor. They always seem to choose a person whose job is to protect and to help people. A person who, because of what they do, gains the respect of everybody else. And that's because when we're little, we look at police officers as being big and strong and brave, and somehow magical *** [w]e learn from our families to trust them and respect them. ***

> \* \* \*

> Our children play cops and robbers. Cops are the good guys and robbers are the bad guys. We learn a sense of right and wrong from them and from it.

> \* \* \*

> While we get hurt and we're victimized, we go to officers like Triche and Gray for justice. Officer Gray now comes in this courtroom, to you, for justice and for the protection of the laws of the State of Illinois."

■ We find no error in these comments. There was no dispute that Gray was a police officer, and the prosecutor's statements, reflecting what were essentially common perceptions about police officers, amounted to a proper commentary upon the ill effects of crime on the community. Additionally, they followed a defense closing argument which repeatedly characterized the State's theory as a "picture of impossibility" and derided the notion that these officers would chase and trip a fleeing suspect instead of simply shooting him in the back. Thus, the State's effort to restore the image of these officers as trustworthy was not unwarranted, and defendant's argument must fail.

As his final contention on appeal, defendant asserts that the trial court abused its discretion in sentencing him to 18 years' imprisonment.

The record reveals that defendant failed to object to his sentence at the sentencing hearing and he did not contest it in any subsequent motion. (See Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(c).) Accord-

ingly, defendant has waived this issue for review. *People v. Gomez* (1993), 247 Ill. App. 3d 68, 617 N.E.2d 320; see also *People v. Hartzol* (1991), 222 Ill. App. 3d 631, 646, 584 N.E.2d 291.

■ Even if not waived, the issue lacks merit. If a sentence is within statutory limits, a reviewing court will not reverse it absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882; *People v. Cabrera* (1987), 116 Ill. 2d 474, 494, 508 N.E.2d 708.

The sentencing range for attempted murder, a Class X felony, is not less than 6 years nor more than 30 years. (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(c)(1), 1005—8—1(a)(3).) The sentence in this case was well below the maximum defendant could have received and was not an abuse of discretion. At the sentencing hearing, the court considered facts in aggravation and mitigation and noted that, although defendant was 18 years of age and was reared in a middle-income family with whom he had an excellent relationship, he showed no remorse for his conduct in attempting to kill Gray. Despite defendant's assertedly good background, he was carrying a gun on the street and attempting to "pop" another man simply for being in his neighborhood. Under the circumstances of this case, there was no abuse of discretion on this issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and JOHNSON, J., concur.