# Illinois Official Reports

## Appellate Court

---

### *People v. Kidd*, 2014 IL App (1st) 112854

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHANDRA KIDD, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-2854 |
| Filed | March 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for attempted murder arising from an incident in which officers responding to a report of shots fired encountered three persons, including defendant, and an officer chased defendant when she ran away after being told to stop, defendant's conviction for attempted murder based on the pursuing officer's testimony that she pointed a revolver at the officer and pulled the trigger was reversed and the cause was remanded for a new trial, since the trial court should have instructed the jury on the lesser included offense of aggravated assault, especially in view of the facts that the case rested solely on the difference between the officer's testimony that defendant pointed the revolver at him and pulled the trigger and defendant's testimony that she pointed the revolver at the officer but did not pull the trigger, and under the circumstances, it could not be said that the trial court's error in failing to give the instruction on the lesser included offense did not contribute to defendant's conviction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-12569; the Hon. Neil J. Linehan, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Tomas G. Gonzalez, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Anthony O'Brien, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE TAYLOR delivered the judgment of the court, with opinion.
Justices McBride and Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1    On May 15, 2007, defendant Shandra Kidd and two friends were walking in the vicinity of 2727 East 78th Street in Chicago when they were approached by police officers. Kidd ran away. One of the officers, Officer Charles Johnson, gave chase. According to Johnson, during the chase, Kidd pulled out a gun and attempted to shoot him. In a statement later given to police, Kidd admitted that she was in possession of a gun and pointed it in Johnson's direction but denied pulling the trigger.

¶ 2    Following a jury trial, Kidd was convicted of attempted murder of a peace officer. She was sentenced to 40 years' imprisonment, plus a 15-year sentencing enhancement for committing the crime while armed with a firearm. Kidd now appeals her conviction and sentence. For the reasons that follow, we reverse and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4    Kidd was charged with both attempted murder of a peace officer and unlawful possession of a weapon by a felon. (The latter charge is not at issue in this appeal.) The indictment for attempted murder stated the following, in relevant part:

> "Shandra Kidd committed the offense of attempt first degree murder in that she, with intent to commit the offense of first degree murder, without lawful justification, did any act, to wit, while armed with a firearm, pointed a firearm at Charlie Johnson and pulled the trigger *** which constituted a substantial step toward the commission of first degree murder of a peace officer."

¶ 5    Because the defendant challenges the sufficiency of the evidence against her, a complete recitation of the facts presented at trial is necessary to a disposition of this appeal.

¶ 6    Officer Johnson testified that on May 15, 2007, at around 12:40 a.m., he was on patrol in his unmarked police car when he received a call of shots fired near the intersection of 78th Street and Burnham Avenue. He was with his partners Darryl Bowen and Janice Wilson. Upon arriving at 78th and Burnham, Johnson observed three individuals who appeared overdressed

for the weather, with sweatshirts and skull caps. They were the only individuals in the vicinity. The three individuals looked in the direction of the unmarked police car and quickened their pace. All three officers exited their squad car and approached the three individuals, telling them to stop. The officers were in plainclothes, but their police stars were visible and they were wearing their guns in their holsters as well as bulletproof vests.

¶ 7 Johnson testified that two of the individuals stopped, but the third individual, whom he identified in court as Kidd, immediately ran. Johnson chased after Kidd on foot while his partners remained with the other two individuals. Kidd rounded the corner at 78th and Burnham and began running south on Burnham down the middle of the street. As she rounded the corner, her hat came off and Johnson realized that she was a female. He stated that as she was running, he "noticed something dropping out" from her person.

¶ 8 When Johnson caught up to Kidd, he grabbed the back of her sweatshirt, attempting to push her body against a car so that he could handcuff her. He testified that she turned around and pushed a hard metal object against his chest. He did not see the object at that time, but he heard a click, which he recognized instantly as being the sound of a gun's trigger being fired. No bullet was discharged.[1]

¶ 9 Johnson testified that as soon as he heard the click, he immediately pushed Kidd away, sending her flying over the hood of the car. At this point, Johnson drew his weapon and ordered Kidd to show her hands. He saw her pointing a black revolver directly at him and heard two more clicks. Again, no bullets were discharged. Kidd then began running away. Johnson fired his gun multiple times in her direction and took cover behind a tree. He heard Kidd screaming that she had been hit. Peeking out from behind the tree, he saw her flailing on the ground. He ordered her to drop the gun. He stated that she pushed the gun away, though not as far as he would have liked, because it was still close enough for her to grab it. Johnson then asked her whether she was trying to kill him. Kidd responded, "They sent me off." Shortly thereafter, Johnson's partner Bowen arrived on the scene. Johnson told Bowen, "She just tried to kill me."

¶ 10 On cross-examination, Johnson testified that he is 5 feet 8 inches, while Kidd is 4 feet 11 inches. He further testified that the only people who saw what happened between them were himself and Kidd.

¶ 11 Officer Bowen testified that on May 15, 2007, he, Johnson, and Wilson exited their unmarked squad car to conduct a field interview with three individuals wearing hoodies and skull caps. When Kidd took off running, Johnson gave chase while Bowen and Wilson detained the other two individuals, named Aaron Ballard and Antwaun Smith. Bowen testified that he lost sight of Johnson and Kidd as they rounded the corner. Shortly thereafter, he heard at least three gunshots. He ran to Johnson's aid, leaving Wilson with Ballard and Smith. When he reached 7821 Burnham, he saw Johnson pointing his gun at Kidd, who was lying on the ground and bleeding. Bowen testified that Johnson told him, "She tried to kill me."

¶ 12 Former Assistant State's Attorney Jennifer Geyer testified that around 1 p.m. on May 15, 2007, she took Kidd's handwritten statement at the hospital in the presence of two detectives. According to Geyer, Kidd gave the following statement.

---

[1]It was the State's theory that the bullets had fallen out of Kidd's gun during the earlier portion of the chase and were the objects that Johnson saw "dropping out."

¶ 13    Kidd stated that around midnight on May 15, 2007, she was outside near 78th and Burnham with Ballard and Smith. Ballard had two guns and asked Kidd to hold one. Kidd stated that they needed the guns for protection because there was shooting in the area. She also stated that Ballard gave the gun to her because female officers are less common, and it was unlikely that a male officer would search her. Kidd took the gun, which she knew was loaded, and placed it in her pocket.

¶ 14    Kidd stated that a "bubble car" (police car) pulled up. Smith said, "Here come the dicks." The officers exited the car, wearing bulletproof vests. One of them was a woman. Kidd ran away because she was carrying a gun and believed that the female officer would search her. As she ran, she was holding the gun in her pocket. She was aware that an officer was chasing her. She took the gun out of her pocket as she turned onto Burnham. When she reached the middle of the block, she turned around to see where the officer was. As she did so, she pointed the gun at him, although she stated that she did not know why she pointed the gun at him. At the time, the chamber that held the bullets to her gun was hanging open, but she did not know if there were any bullets inside.

¶ 15    Kidd said that she saw the officer run into the side of a parked truck. She kept running and did not turn around again. She heard a gunshot, and her leg went numb. She fell down with the gun still in her hand. She started crying and told the officer that she was sorry.

¶ 16    The parties stipulated that if Dr. Matthew Kleinmaier were called to the stand, he would testify that on May 15 to 17, 2007, he treated Kidd for a gunshot wound on her left buttock. Dr. Kleinmaier opined that when Kidd gave her statement to the Chicago police department on May 15, 2007, her mental status, ability to understand, and clarity of thought were not diminished or adversely affected.

¶ 17    The State also introduced various evidence about Kidd's gun and the physical evidence at the scene. The parties stipulated that Officer Daniel Pruszewski would testify that he arrived on the scene to assist Johnson shortly after the shooting. When Pruszewski arrived, Kidd was lying on the ground with a .38-caliber revolver lying near her. Johnson identified the revolver as the one Kidd had used. Pruszewski turned over the revolver for ballistics testing and a proper chain of custody was maintained at all times.

¶ 18    Joseph Dunigan, a forensic investigator for the Chicago police department, testified that he processed the scene for evidence. He recovered five live unfired .38-caliber cartridges on the street between 7812 and 7817 Burnham. He also recovered two fired 9-millimeter cartridge cases, one at 7821 Burnham and the other at 7825 Burnham, as well as a third fired cartridge in the dirt under a porch at 7829 Burnham.

¶ 19    Dustin Johnson, a firearms examiner with the Illinois State Police, testified that he tested the .38-caliber revolver. He stated that the revolver was operable and capable of firing bullets. He also stated that the five unfired .38 cartridges recovered at the scene were suited to fit the recovered revolver and could not be used in a 9-millimeter pistol.

¶ 20    The sole witness called by the defense was Jennifer Bell, a forensic scientist employed by the Illinois State Police Forensic Science Center. Bell testified that Kidd's DNA was not found on the trigger, hammer, sight, or cylinder of the gun. On cross-examination, she stated that it was possible that Kidd touched the gun but did not leave behind enough DNA to be detected.

¶ 21    During the jury instruction conference, counsel for the defense requested that the court instruct the jury on aggravated assault as a lesser included offense of attempted murder. The trial court denied counsel's request.

¶ 22    The jury found Kidd guilty of attempted murder of a peace officer and unlawful possession of a weapon by a felon. Following a sentencing hearing, the trial court sentenced her to 40 years' imprisonment for attempted murder, plus an additional 15-year sentencing enhancement for committing the crime while armed with a firearm, for a total of 55 years. It also sentenced her to five years for unlawful use of a weapon by a felon, to be served concurrently with her attempted murder sentence. Kidd now appeals her conviction and sentence for attempted murder.

¶ 23                              II. ANALYSIS

¶ 24    On appeal, Kidd raises three challenges to her conviction. First, she contends that the evidence was insufficient to convict her, since the State's only evidence of intent to kill was the testimony of Officer Johnson, whose version of events was "incredible and contrary to human nature." Second, she contends that the trial court failed to properly admonish prospective jurors in accordance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). Third, she contends that the trial court erred by refusing to instruct the jury on aggravated assault as a lesser included offense of attempted murder. In addition, Kidd also argues that her sentence was excessive in light of the evidence of her rehabilitative potential.

¶ 25                      A. Sufficiency of the Evidence

¶ 26    We begin by considering Kidd's contention that the evidence presented at trial was insufficient to prove her guilty beyond a reasonable doubt.

¶ 27    Where a defendant challenges the sufficiency of the evidence used to convict her, the reviewing court must determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). It is axiomatic that the jury has the responsibility to determine the witnesses' credibility and the weight to be given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001); *People v. Evans*, 209 Ill. 2d 194, 211 (2004). Accordingly, a reviewing court may not disturb the jury's determination unless " 'the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt as to guilt.' " *People v. Sanchez*, 375 Ill. App. 3d 299, 301 (2007) (quoting *People v. Eiland*, 217 Ill. App. 3d 250, 260 (1991)); see *Ortiz*, 196 Ill. 2d at 267 (conviction will be reversed where the State's evidence is so " 'improbable, unconvincing or contrary to human experience' " that defendant could not be found guilty beyond a reasonable doubt (quoting *People v. Stevenson*, 25 Ill. 2d 361, 365 (1962))). Under this standard, the reviewing court must make all reasonable inferences from the record in favor of the prosecution. *People v. Cardamone*, 232 Ill. 2d 504, 511 (2009).

¶ 28    To sustain a conviction for attempted murder of a peace officer, the State must establish beyond a reasonable doubt that the defendant (1) performed an act constituting a substantial step toward the commission of murder, (2) possessed the criminal intent to kill the victim, and

(3) knew or reasonably should have known that the victim was a peace officer in the course of performing his official duties. 720 ILCS 5/8-4(a), 9-1(a)(1), (b)(1) (West 2010); see *People v. Carroll*, 260 Ill. App. 3d 319, 329 (1992). In this case, only the first two elements are at issue. Most of the relevant facts are not in dispute. The parties agree that around midnight on May 15, 2007, Kidd was walking outside with two friends while in possession of a loaded revolver. When they were approached by police officers, Kidd ran away, and Officer Johnson gave chase. As Kidd ran, she took the revolver out of her pocket, and the cylinder opened, causing the cartridges to fall on the ground. Furthermore, at some point during the chase, Kidd pointed the revolver at Johnson, whom she knew was a police officer. It is here that the stories diverge. Kidd alleges, both in her statement to police and in this appeal, that she did not pull the trigger and, in fact, did not know why she pointed the gun at Johnson. The State alleges, via the testimony of Johnson, that Kidd pulled the trigger multiple times, which constituted a substantial step toward the commission of murder and evinced an intent to kill Johnson.

¶ 29    Kidd argues that Johnson's version of events is so "improbable, unconvincing [and] contrary to human experience" (internal quotation marks omitted) (*Ortiz*, 196 Ill. 2d at 267) that her conviction must be reversed. In support, she points to three undisputed facts: first, that Kidd's gun was empty; second, that Kidd, at 4 feet 11 inches, was much smaller than the 5-foot-8-inch Johnson; and third, that Kidd was aware that Johnson had backup nearby. In light of these facts, she argues that pulling the trigger of her gun would have been "self-destructive" and "effectively a death wish." We disagree. By Kidd's own admission, she knew that the gun was loaded when she received it from Ballard, and, at the time she pointed the gun at Johnson, she was not aware that it had become empty. Given these facts, it is not implausible or contrary to human experience that she would attempt to shoot Johnson. Moreover, the difference in size between her and Johnson is inconsequential where she did not know that her gun was unloaded. Finally, although Johnson had backup, it is not implausible that Kidd might have expected that she could escape the backup after dealing with Johnson, since the evidence shows that she had a significant head start running down Burnham.

¶ 30    Based upon the foregoing, when viewing the evidence in the light most favorable to the prosecution (*Cardamone*, 232 Ill. 2d at 511), we cannot say that no rational trier of fact could have found the essential elements of attempted murder beyond a reasonable doubt. See *Jackson*, 443 U.S. at 318; *Cunningham*, 212 Ill. 2d at 279. Although Kidd and Johnson gave different versions of events, Johnson's version was not so unreasonable or improbable that the jury was not entitled to find his testimony credible. *Evans*, 209 Ill. 2d at 211 (credibility determinations are the province of the jury, and reversal is not warranted simply because a defendant claims that a witness was not credible). Thus, we find that the evidence presented at trial was sufficient to convict Kidd of attempted murder of a peace officer.

¶ 31                                    B. Compliance With Rule 431(b)
¶ 32    Kidd next contends that the trial court violated Rule 431(b) when it (1) failed to instruct prospective jurors that Kidd had a right not to present any evidence on her behalf, and (2) failed to ascertain whether the jurors both understood and accepted those principles of law that it did

explain. The State argues that the trial court met both of these requirements, even though the wording it used was not identical to the wording contained in Rule 431(b).

¶ 33    Kidd acknowledges that her counsel did not properly preserve this issue for review by making a contemporaneous objection or by raising the issue in a posttrial motion. See *People v. Allen*, 222 Ill. 2d 340, 350 (2006) (in order to properly preserve an issue for review, defendant is required to raise an objection at trial and in a written posttrial motion, and failure to do so will result in forfeiture of that issue on appeal (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988))); *People v. Chapman*, 194 Ill. 2d 186, 225 (2000). However, Kidd argues that we should consider her contention of error under the plain error doctrine.

¶ 34    The plain error doctrine "allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). In this case, Kidd does not argue plain error under the second prong. See *People v. Thompson*, 238 Ill. 2d 598, 613-15 (2010) (trial court's noncompliance with Rule 431(b) did not satisfy the second prong of the plain error analysis). Rather, Kidd argues that the first prong applies, in that the evidence against her was so closely balanced that the guilty verdict might have resulted from the error. *Herron*, 215 Ill. 2d at 187.

¶ 35    Before a reviewing court may invoke the plain error doctrine, it must first determine whether any error occurred. *Chapman*, 194 Ill. 2d at 225-26; see *Herron*, 215 Ill. 2d at 187 ("only if there was error can the defendant plausibly argue that the error prejudiced him in a close case"). Thus, we turn to the merits of Kidd's contentions of error. Because the issue here is compliance with a supreme court rule, our review is *de novo*. *People v. Lloyd*, 338 Ill. App. 3d 379, 384 (2003).

¶ 36    Rule 431(b), which codified our supreme court's ruling in *People v. Zehr*, 103 Ill. 2d 472 (1984), provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

This rule mandates a "specific question and response process," in which the jurors, either individually or in a group, are asked whether they understand and accept the enumerated principles. *Thompson*, 238 Ill. 2d at 607. However, Rule 431(b) does not require that the specific language of the rule be used. *People v. Zirko*, 2012 IL App (1st) 092158, ¶ 62; see also *People v. Ware*, 407 Ill. App. 3d 315, 356 (2011) ("we do not believe there is special magic language that needs to be used to show whether a prospective juror understands and accepts the

four *Zehr* principles"); *People v. Vargas*, 396 Ill. App. 3d 465, 472 (2009) (noting that Rule 431(b) does not provide for any "magic words" or "catechism" to satisfy its mandate).

¶ 37    In the case at bar, the trial court instructed all of the prospective jurors as follows:

> "Again, at this time, I'm going to ask questions or reiterate some basic principles of law that you must follow in this case. Please raise your hand and state your name if any of the questions applies to you or if any one of you disagrees with any of these principles of law.
>
> ***
>
> The defendant is presumed to be innocent of the charges against her. This presumption remains with the defendant throughout the trial and is not overcome unless by your verdict you find the State has proven the defendant guilty beyond a reasonable doubt.
>
> Let the record reflect that no one has raised their hands.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt and this remains on the State through every stage of the trial. The defendant is not required to prove his [*sic*] innocence.
>
> Again, let the record reflect that no one has raised their hands.
>
> Defendant has the absolute right to remain silent. She may elect to sit there and not to testify in her own defense and rely upon a presumption of innocence. You may draw no inference to the fact the defendant chooses to remain silent either in favor or against the defendant if she elects to remain silent.
>
> Again, let the record reflect that no one has raised their hands."

Kidd contends that these instructions were deficient in two ways. First, she argues that the trial court failed to instruct the jurors on the third *Zehr* principle, namely, that the defendant is not required to offer any evidence on her own behalf. Second, she argues that the trial court failed to properly ascertain whether the jurors understood and accepted the remaining principles. We disagree on both counts.

¶ 38    With regard to Kidd's first argument, the record shows that the trial court admonished the prospective jurors as follows: "The defendant is not required to prove his [*sic*] innocence." This exact statement was found to be a satisfactory paraphrase of the third *Zehr* principle in *People v. Chester*, 409 Ill. App. 3d 442, 447 (2011). As the *Chester* court explained:

> "The court's statement that 'defendant is not required to prove his innocence' would be interpreted by a reasonable jury to satisfy the third Rule 431(b) principle because if defendant is not required to prove his innocence, he has no reason to present evidence. As Rule 431(b) does not require the court to recite the principles verbatim, the court's language was sufficient to comply with the rule." *Id.*

See also *People v. Atherton*, 406 Ill. App. 3d 598, 611 (2010) (where trial court admonished prospective jurors that " 'defendant does not have the burden of proving himself innocent,' " it sufficiently conveyed the principle that the defendant was not obligated to present any evidence on his behalf); *People v. Ingram*, 409 Ill. App. 3d 1, 12-13 (2011) ("We find that, by informing the venire that the defendant is not required to prove that she is innocent of the charges and that she is not required to prove anything, the trial court sufficiently ensured the venire understood and accepted that defendant was not required to provide evidence on her

own behalf."). In accordance with these cases, we find that, by stating that "The defendant is not required to prove his [*sic*] innocence," the trial court in this case sufficiently conveyed the principle that Kidd was not obligated to present evidence on her behalf.

¶ 39 Nor do we agree with Kidd's contention that the trial court failed to properly ascertain whether the jurors understood and accepted the *Zehr* principles. Under Rule 431(b), it is insufficient for a trial court to merely instruct the jurors on the Rule 431(b) principles and then issue a general admonition for them to "follow the law." *People v. Blair*, 395 Ill. App. 3d 465, 477-78 (2009). Rather, "the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles." *Thompson*, 238 Ill. 2d at 607. However, as noted, the trial court does not need to use the precise language of Rule 431(b) in order to satisfy the rule's requirements. See, *e.g.*, *Zirko*, 2012 IL App (1st) 092158, ¶ 62; *Ware*, 407 Ill. App. 3d at 356.

¶ 40 In this case, before instructing the prospective jurors on the *Zehr* principles, the trial court told them to raise their hands and state their name "if any one of you disagrees with any of these principles of law." This court has repeatedly found similar statements to satisfy the requirements of Rule 431(b). For instance, in *People v. Quinonez*, 2011 IL App (1st) 092333, ¶ 44, the trial court asked potential jurors whether they " 'ha[d] a problem' " with the first principle, whether they " 'disagreed' " with the second and third principles, and whether they would hold the defendant's failure to testify " 'against' " him. The *Quinonez* court found no error in these statements, explaining: "Although the court did not use the precise language of Rule 431(b), the words that it did use clearly indicated to the prospective jurors that the court was asking them, not only whether they accepted the principles enumerated in the rule, but also whether they understood them." *Id.* ¶ 50. Likewise, in *People v. Martin*, 2012 IL App (1st) 093506, ¶ 78, this court found that where the trial court asked prospective jurors whether they "had any quarrel" with the principles, that was sufficient to indicate that the court was asking them whether they understood and accepted such principles. (Internal quotation marks omitted.) See also *Ingram*, 409 Ill. App. 3d at 12 (trial court complied with Rule 431(b) when it asked prospective jurors if they had " 'any difficulty or quarrel' " with the principles).

¶ 41 Similarly, in the present case, when the trial court asked prospective jurors whether they disagreed with the *Zehr* principles, that was sufficient to indicate that the court was asking them whether they understood and accepted such principles, even though the court did not use that precise language. Thus, we find no error in the trial court's Rule 431(b) admonitions.

¶ 42 C. Instruction on Aggravated Assault

¶ 43 Kidd next contends that the trial court erred in refusing to instruct the jury on aggravated assault as a lesser included offense of attempted murder. The State contends that no error occurred, arguing that aggravated assault is not a lesser included offense of attempted murder, and even if it were, there was no evidence that would permit the jury to conclude that an aggravated assault occurred.

¶ 44 Although a defendant cannot generally be convicted of an uncharged offense, in certain circumstances, a defendant is entitled to have the jury instructed on less serious offenses that are included in the charged offense. *People v. Hamilton*, 179 Ill. 2d 319, 323 (1997); *People v. Bryant*, 113 Ill. 2d 497, 502 (1986). Such an instruction "provides an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the

charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense." *Id.* Whether an offense encompasses a lesser included offense is a question of law, which we review *de novo*. *People v. Landwer*, 166 Ill. 2d 475, 486 (1995).

¶ 45    In *People v. Ceja*, 204 Ill. 2d 332, 360 (2003), our supreme court established a two-step approach to determining whether a defendant is entitled to an instruction on a lesser included offense. First, the court must determine whether the charging instrument describes the lesser offense. *Id.*; see also *People v. Miller*, 238 Ill. 2d 161, 172-73 (2010) (reaffirming the use of the charging instrument approach in determining whether an uncharged crime is a lesser included offense for jury instruction purposes). This prong is satisfied where the lesser included offense has a "broad foundation" in the language of the indictment, such that the indictment "set[s] out the main outline of the lesser offense proposed by the defendant." *Bryant*, 113 Ill. 2d at 505. It is not fatal that every element of the lesser offense is not explicitly contained in the indictment, as long as the missing element can be reasonably inferred. *People v. Kolton*, 219 Ill. 2d 353, 364 (2006). Second, the court must determine whether the evidence presented at trial would permit the jury to rationally find the defendant guilty of the lesser offense but not guilty of the greater offense. *Ceja*, 204 Ill. 2d at 360; *Hamilton*, 179 Ill. 2d at 324.

¶ 46    In the present case, Kidd argues that based upon the evidence introduced at trial, the jury should have been instructed on aggravated assault as a lesser included offense of attempted murder of a peace officer. Aggravated assault is defined as knowingly engaging in conduct which places another in reasonable apprehension of receiving a battery, while using a deadly weapon or knowing the other person to be a police officer. 720 ILCS 5/12-1, 12-2 (West 2010). As previously mentioned, attempted murder of a peace officer is defined as performing an act constituting a substantial step toward the commission of murder, with the criminal intent to kill the victim and the knowledge that the victim is a peace officer in the course of performing his official duties. 720 ILCS 5/8-4(a), 9-1(a)(1), (b)(1) (West 2010). The indictment in this case alleged the following:

> "Shandra Kidd committed the offense of attempt first degree murder in that she, with intent to commit the offense of first degree murder, without lawful justification, did any act, to wit, while armed with a firearm, pointed a firearm at Charlie Johnson and pulled the trigger *** which constituted a substantial step toward the commission of first degree murder of a peace officer."

¶ 47    The parties cite four cases in which a defendant was convicted of attempted murder and argued on appeal that the trial court erred in failing to instruct the jury on the lesser included offense of aggravated assault. In *People v. Ross*, 226 Ill. App. 3d 392 (1992), and in *People v. Krueger*, 176 Ill. App. 3d 625 (1988), the court found that the trial court's failure to give an aggravated assault instruction was reversible error. However, in *People v. Jefferson*, 260 Ill. App. 3d 895 (1994), and in *People v. Kimball*, 243 Ill. App. 3d 1096 (1993), the court upheld the trial court's refusal to give the requested instruction. We examine these four cases in turn. As shall be discussed below, we find that these four cases are reconcilable, based upon the differing evidence adduced in each case and the language used in the indictments, and we also find that the present case is similar to *Ross* and *Krueger* rather than *Jefferson* and *Kimball*.

¶ 48    In *Ross*, the defendant was indicted for attempted murder based upon his act of " 'aiming a gun' " at a police officer. *Ross*, 226 Ill. App. 3d at 395. (As shall be discussed below, this language is quite similar to the language of the instant indictment, which states that Kidd

"pointed a firearm" at Johnson.) At trial, the evidence showed that an officer was chasing the defendant on foot as he was fleeing from a stolen automobile. *Id.* at 393. During the chase, the defendant pointed a pistol at the officer, just like Kidd in the instant case. *Id.* at 394. The officer immediately bent down, then stood up and fired three shots, wounding the defendant. *Id.* It appears that the defendant never actually fired any shots at the officer. Based upon these facts, the *Ross* court concluded that the jury could have found that when the defendant pointed his gun at the officer, the officer was placed in reasonable apprehension of being struck by a bullet, so as to support a conviction for aggravated assault. *Id.* at 395. Additionally, the language of the indictment, which based the charge of attempted murder on defendant's actions of " 'aiming a gun' " at the officer, was broad enough to encompass the element of apprehension. *Id.* Thus, the *Ross* court held that the trial court erred in failing to instruct the jury on aggravated assault.

¶ 49    In support of its decision, the *Ross* court cited *Krueger. Id.* The indictment in *Krueger* stated that defendant and his codefendant fired several gunshots from close range at the victim's house while believing him to be inside. *Krueger*, 176 Ill. App. 3d at 625-26. It did not specifically say that they shot at the victim. At trial, the evidence showed that 7 to 10 bullets hit the front of the victim's house. *Id.* at 627. However, although the victim was allegedly visible through the sheer drapes on his living room window, no shots were actually fired through that window. *Id.* at 629. The *Krueger* court found that this evidence could support an inference that the defendant was shooting to scare the victim, not to kill him, and the language of the indictment would also encompass such a finding. *Id.* Thus, the lesser included offense instruction was warranted. *Id.*

¶ 50    The court reached the opposite conclusion in *Kimball*, 243 Ill. App. 3d 1096. In that case, the indictment stated that the defendant " 'intentionally and knowingly attempted to kill Dwayne Brown by shooting at him with a gun.' " *Id.* at 1099. The *Kimball* court found that this indictment was not broad enough to accommodate the element of apprehension, distinguishing it from the indictment in *Ross* because it alleged that defendant was "shooting" a gun rather than merely "aiming" a gun. *Id.* Moreover, at trial, the intended victim testified that the defendant shot a gun directly at his face. *Id.* There was no evidence to support the conclusion that the defendant either merely aimed a gun at him, as in *Ross*, or merely shot in his direction to scare him, as in *Krueger. Id.* Thus, the evidence would not support a conviction for aggravated assault. See *Ceja*, 204 Ill. 2d at 360 (instruction on lesser included offense only warranted where the evidence would permit a rational jury to find the defendant guilty of the lesser offense but not guilty of the greater offense); *Hamilton*, 179 Ill. 2d at 324 (same). Accordingly, the *Kimball* court held that defendant was not entitled to an instruction on aggravated assault. *Kimball*, 243 Ill. App. 3d at 1099.

¶ 51    Finally, in *Jefferson*, 260 Ill. App. 3d at 909, the indictment stated that the defendant " 'intentionally and knowingly attempted to kill Eric Green by shooting at him with a handgun,' " which is nearly identical to the language used in *Kimball*. At trial, Green testified that he felt shots pass by his head and knew that he was being shot at, and other witnesses testified that the shooter was aiming at Green from a shooting stance. *Id.* at 910. The *Jefferson* court found that the indictment did not contain the main outline of the offense of aggravated assault, nor would the evidence at trial support a conviction for aggravated assault, since there was no evidence from which a jury could conclude that the shooter intended only to frighten

Green. *Id.* The court therefore held that the trial judge did not error in refusing to instruct the jury on aggravated assault. *Id.*

¶ 52    The instant case is similar to *Ross* and *Krueger*, and, concomitantly, it is readily distinguishable from *Kimball* and *Jefferson*. The indictment in the instant case states that Kidd "pointed a firearm at Charlie Johnson and pulled the trigger." The allegation that Kidd pointed a firearm at Johnson sets out the main outline of the offense of aggravated assault. *Krueger*, 176 Ill. App. 3d at 629 (citing *Bryant*, 113 Ill. 2d at 505). It is highly similar to the language of the indictment in *Ross*, which stated that defendant " 'aim[ed] a gun' " at an officer. *Ross*, 226 Ill. App. 3d at 395. It is also dissimilar to the indictments in *Kimball* and *Jefferson*, both of which state that the defendant " 'attempted to kill [the victim] by shooting at him.' " *Kimball*, 243 Ill. App. 3d at 1099; *Jefferson*, 260 Ill. App. 3d at 909. As for the evidence at trial, Kidd averred in her statement that she pointed the gun at Johnson, but not that she pulled the trigger. This is directly analogous to the situation in *Ross*, where the defendant was running from a police officer and pointed a gun at him during the chase but did not fire. *Ross*, 226 Ill. App. 3d at 394. If the jury had found Kidd's version of events to be credible, it could rationally have found her guilty of aggravated assault but not guilty of attempted murder. See *Ceja*, 204 Ill. 2d at 360; *Hamilton*, 179 Ill. 2d at 324. Thus, we hold that the trial court erred in failing to instruct the jury on aggravated assault as a lesser included offense of attempted murder of a peace officer.

¶ 53    The State next argues that, even if the trial court erred in failing to instruct the jury on aggravated assault, such error was harmless where the evidence of guilt was so clear and convincing that the jury could not reasonably have found her not guilty of attempted murder. See *People v. Jones*, 81 Ill. 2d 1, 9 (1979). We disagree. Although the evidence that Kidd committed attempted murder was sufficient to convict, it was not overwhelming. The only witnesses to the incident were Johnson and Kidd. Johnson testified that Kidd pointed her gun at him and pulled the trigger multiple times, while Kidd in her statement to police said only that she pointed her gun in his direction. The physical evidence, showing live unfired cartridges from Kidd's revolver at various locations on the street between 7812 and 7817 Burnham, was compatible with both Johnson's and Kidd's versions of events. Thus, the State's case rested solely on Johnson's testimony and on his credibility as opposed to Kidd's. In light of this evidence, we are unable to declare beyond a reasonable doubt that the trial court's error did not contribute to Kidd's conviction. See *People v. St. Pierre*, 122 Ill. 2d 95, 113-14 (1988) (error may only be held harmless where the reviewing court is satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction).

¶ 54                                          III. CONCLUSION

¶ 55    Therefore, for the foregoing reasons, we reverse Kidd's conviction for attempted murder of a peace officer and remand for a new trial. Because we are reversing, we need not consider Kidd's argument that her sentence is excessive in light of her rehabilitative potential.

¶ 56    Reversed and remanded.