THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY J. CHESTER, Defendant-Appellant.

Fourth District    No. 4—08—0841

Opinion filed January 12, 2010.

Michael J. Pelletier, Gary R. Peterson, and Karen Munoz, all of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Aimee Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE POPE delivered the opinion of the court:

In October 2007, defendant, Gregory J. Chester, was indicted on three counts of aggravated battery (720 ILCS 5/12—4(a), 124(b)(6) (West 2006)) and one count of resisting a peace officer (720 ILCS 5/31—1(a—7) (West 2006)). Following a jury trial, defendant was convicted and sentenced to 12 years' imprisonment for aggravated battery (McLean County case No. 07—CF—1069) with the sentence to run consecutive to defendant's sentences in McLean County case No. 07—CF—797 of 5 years' imprisonment for obstructing justice and 364 days in jail for resisting arrest. Defendant appeals only on issues raised in his aggravated-battery case (McLean County case No. 07—CF—1069), arguing the following: (1) the trial court violated Illinois

Supreme Court Rule 431(b) (eff. May 1, 2007); (2) the State improperly commented during closing argument on defendant's exercise of his right to refrain from testifying and presenting evidence; and (3) the trial court abused its discretion in sentencing defendant to 12 years' imprisonment. We affirm.

## I. BACKGROUND

On October 6, 2007, Bloomington police officer Andrew Chambers was in complete police uniform patrolling in a marked police car when he passed a purple Cadillac driven by defendant, who Officer Chambers knew did not have a valid driver's license. After Officer Chambers activated his car's lights and siren, the Cadillac pulled into the driveway of an apartment complex. Defendant exited the vehicle and looked back at Officer Chambers, then proceeded to take off running. Officer Chambers got out of his vehicle and, standing approximately 20 feet from defendant, yelled at defendant to stop. Defendant proceeded into the common area of the apartment building through a steel door. As Officer Chambers followed, defendant slammed the door into the officer. Officer Chambers shielded his face with his left arm. He immediately felt extreme pain, and his fingers went numb when the door slammed on his arm.

Once inside the building, Officer Chambers attempted to deploy his Taser, but the probe fell off in the hallway. As he proceeded up the stairs, defendant yelled, "[B]aby, police are chasing me. Open the door." Officer Chambers followed defendant up the stairs and saw defendant banging on the door of apartment C, saying "let me in, let me in." A female inside the apartment opened the door for defendant, who entered the apartment and slammed the door on Officer Chambers' right arm. Officer Chambers braced himself and pushed the door back on defendant, knocking him to the ground. Defendant continued to resist arrest as Officer Chambers attempted to subdue him with pressure-point tactics. Defendant ripped the officer's uniform and ripped off his credentials and badge. Officer Chambers was eventually able to conduct a "drive stun" on defendant, holding the gun directly against defendant's body. The drive stun was not successful, and defendant continued hitting Officer Chambers and became more aggressive in his resistance. The officer issued a second drive stun for approximately five seconds. Defendant dropped his arms to his side and said, "I quit."

X-rays of Officer Chambers's left arm revealed fractures in the ulna and radius, both of the bones in the forearm. Because of the injuries he sustained, he was in physical therapy for 1½ months and missed approximately 3 months of work.

After presenting its case, the State dropped one count of aggravated battery (720 ILCS 5/12—4(b)(6) (West 2006)) as improperly charged. The jury convicted defendant of the remaining two aggravated-battery charges and resisting a peace officer. After the trial court found the resisting charge and one of the aggravated-battery charges merged with the remaining count of aggravated battery, the court sentenced defendant as stated.

This appeal followed.

## II. ANALYSIS

### A. *Voir Dire*

Defendant argues the trial court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) when it failed to question jurors on the third and fourth Rule 431(b) principles, which provide defendant is not required to present evidence on his own behalf and defendant's choice not to testify may not be held against him. Defendant concedes he failed to preserve this issue for review but maintains the issue may be addressed by this court as it constitutes plain error.

The plain-error doctrine allows a reviewing court to consider an unpreserved and otherwise forfeited error when "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005). A harmless-error analysis applies when the defendant timely objected to the error. *People v. Johnson*, 388 Ill. App. 3d 199, 203, 902 N.E.2d 1265, 1268 (2009). Because defendant failed to object at trial, we analyze any error under the plain-error doctrine. However, before we consider the plain-error doctrine, we must determine whether the trial court committed an error. We review the trial court's compliance with a supreme court rule *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42, 862 N.E.2d 977, 979 (2007).

In *People v. Zehr*, 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064 (1984), our supreme court held essential to the qualification of a jury in a criminal case is each juror's knowledge of the following four principles: (1) a defendant is presumed innocent, (2) he is not required to present evidence on his own behalf, (3) the State must prove him guilty beyond a reasonable doubt, and (4) his decision not to testify may not be held against him. The subject matter of these principles should be addressed in the course of *voir dire* as a juror's prejudice as to any of them would not be automatically cured with closing remarks by counsel or jury instructions from the trial court. *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

In 1997, our supreme court adopted Rule 431(b) to embrace the *voir dire* principles established in *Zehr*. 177 Ill. 2d R. 431(b). The original rule provided, "[i]f requested by the defendant, the court *shall* ask each potential juror, individually or in a group, whether that juror understands and accepts" the four *Zehr* principles. (Emphasis added.) 177 Ill. 2d R. 431(b). At that time, the trial court had no obligation to *sua sponte* question jurors as to the *Zehr* principles. *People v. Graham*, 393 Ill. App. 3d 268, 272, 913 N.E.2d 99, 103 (2009).

However, effective May 1, 2007, the supreme court amended the language to require trial courts to question jurors on the Rule 431(b) principles without a defendant's prompting, providing:

> " 'The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.' " *People v. Arredondo*, 394 Ill. App. 3d 944, 950, 916 N.E.2d 1263, 1268 (2009), quoting Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

By removing the language that only required *Zehr* questioning at defendant's request, our supreme court imposed a *sua sponte* duty on courts to ask potential jurors individually or in a group whether they accept these principles. *Graham*, 393 Ill. App. 3d at 273, 913 N.E.2d at 103. In carrying out this new duty, trial courts are required to allow each juror to respond. *Graham*, 393 Ill. App. 3d at 273, 913 N.E.2d at 103.

The trial in the present case occurred after the 2007 amendment became effective. Thus, the trial court had a duty to question the jurors about the Rule 431(b) principles and allow the jurors to indicate whether they accepted the principles.

During *voir dire* in the present case, the trial court addressed the Rule 431(b) principles as follows:

> "The defendant in this case is presumed to be innocent of the charges against him. This presumption remains with the defendant throughout every stage of the trial and during the jury deliberations on the verdict, and it is not overcome unless from all the evidence in this case the jury is convinced, both individually and collectively, that the defendant has been proven guilty beyond a reasonable doubt.

> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

The trial court then asked the potential jurors in groups, row by row, whether they understood and accepted those basic propositions of law. Everyone answered in the affirmative. After the court addressed individual issues with jurors, defense counsel began questioning. Defense counsel told the prospective jurors the following:

> "Now [defendant] may or may not testify. We haven't made that decision yet, but that is his right to not testify and it is also his right to testify. If he chooses that he wishes to do that[,] would anybody have a problem if he chose not to testify or would you hold it against him in any way if he did not testify?"

All of the prospective jurors indicated they accepted the fourth Rule 431(b) principle. At the end of the trial, before the jury retired for deliberations, the court properly instructed the jury on all four *Zehr* principles.

Defendant argues the trial court erred when it failed to advise the potential jurors of the third and fourth Rule 431(b) principles, *i.e.*, that defendant need not present evidence on his own behalf and his decision not to testify cannot be held against him. The court's statement that "defendant is not required to prove his innocence" would be interpreted by a reasonable jury to satisfy the third Rule 431(b) principle because if defendant is not required to prove his innocence, he has no reason to present evidence. As Rule 431(b) does not require the court to recite the principles verbatim, the court's language was sufficient to comply with the rule.

Despite its satisfaction of the third Rule 431(b) principle, the trial court erred by not addressing the fourth principle. However, defendant concedes defense counsel rectified this error by addressing the fourth principle with the prospective jurors. Because the court itself is required to address this principle, the court committed error while conducting *voir dire*. In light of defense counsel rectifying the court's error, we next consider whether the error amounts to plain error.

Under the second prong of the plain-error test, we presume the defendant suffered prejudice because of the importance of the right at issue. *Herron*, 215 Ill. 2d at 187, 830 N.E.2d at 480. When a defendant has been denied the right to a fair trial, a reviewing court must take corrective action to preserve the integrity of the judicial process. *People v. Blue*, 189 Ill. 2d 99, 138, 724 N.E.2d 920, 940 (2000). "To determine whether defendant's right to a fair trial has been compromised, we employ the same test that this court uses whenever it applies the

second prong of the plain error test." *Blue*, 189 Ill. 2d at 138, 724 N.E.2d at 940. We consider whether a substantial right has been affected to the extent we doubt that defendant's trial was fundamentally fair. *Blue*, 189 Ill. 2d at 138, 724 N.E.2d at 940-41. Regardless of the weight of the evidence presented against defendant, a new trial is essential where the trial court's error threatens the integrity of the judicial process. *Blue*, 189 Ill. 2d at 139, 724 N.E.2d at 941.

Illinois appellate courts have recently reviewed a variety of *Zehr*-related cases. Although our supreme court has not yet reviewed a case that has applied Rule 431(b) after the March 2007 amendment, it recently addressed the preamendment Rule 431(b) in *People v. Glasper*, 234 Ill. 2d 173, 917 N.E.2d 401 (2009). It subsequently directed this court in *People v. Stump*, 233 Ill. 2d 592, 914 N.E.2d 490 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal), to vacate its order and reconsider that decision in light of *Glasper* despite *Glasper*'s application of the preamendment rule and *Stump*'s application of the postamendment rule.

In *Glasper*, our supreme court provided violation of a supreme court rule does not always mandate reversal as such an error relates to a right created only by the court, not a fundamental right or constitutional protection. *Glasper*, 234 Ill. 2d at 193, 917 N.E.2d at 414. Significantly, the original Rule 431(b) only extended the right in question to defendants who specifically requested it. *Glasper*, 234 Ill. 2d at 193, 917 N.E.2d at 413-14. Under both versions of the rule, the supreme court provided trial courts "shall" question potential jurors where the rule is applicable. 177 Ill. 2d R. 431(b); Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Because the amendment to Rule 431(b) merely changed the application of the rule from optional to automatic, and not the obligations of the trial court once the rule is invoked, we consider *Glasper*'s rationale in the present case.

In *Glasper*, our supreme court considered a trial court's failure, after informing jurors of all four Rule 431(b) principles, to question them on the fourth principle, whether they would hold against defendant his decision not to testify. *Glasper*, 234 Ill. 2d at 188-89, 917 N.E.2d at 411. The defendant in *Glasper* argued the trial court's failure to comply with Rule 431(b) deprived him of his sixth-amendment rights and warranted automatic reversal because the impact of the error could not be measured. *Glasper*, 234 Ill. 2d at 189, 917 N.E.2d at 412. The State countered that any error was harmless because the evidence against defendant was overwhelming. *Glasper*, 234 Ill. 2d at 189-90, 917 N.E.2d at 412. The State further argued the United States Supreme Court does not recognize this type of error as a structural er-

ror that mandates automatic reversal. *Glasper*, 234 Ill. 2d at 191, 917 N.E.2d at 412.

Our supreme court agreed with the State, noting the United States Supreme Court recognizes errors as structural in a very limited group of cases. *Glasper*, 234 Ill. 2d at 198, 917 N.E.2d at 416. While *Glasper* framed its analysis in terms of structural error instead of plain error, our supreme court explained in *Blue* the grounds for reversal based on structural error are the same as the second prong of the plain-error doctrine.

*Glasper* determined the trial court's error did not rise to the level of structural error because the error did not involve a fundamental right or a constitutional protection. *Glasper*, 234 Ill. 2d at 199-200, 917 N.E.2d at 417-18. *Glasper* acknowledged it would not hesitate to reverse a defendant's conviction if the facts showed that the failure to abide by *Zehr* resulted in the defendant's conviction by a biased jury. *Glasper*, 234 Ill. 2d at 200-01, 917 N.E.2d at 418. Further, *Glasper* emphasized its holding is "limited to the version of Rule 431(b)(4) that was in effect at the time of [that] trial, and would not necessarily apply to subsequent versions of the rule." *Glasper*, 234 Ill. 2d at 200, 917 N.E.2d at 418.

*Glasper* addressed another argument defendant raises in the case *sub judice*, *i.e.*, that we cannot ascertain the damage caused by an improperly selected jury once the defendant has been convicted. Quoting language from *People v. Rivera*, 227 Ill. 2d 1, 22, 879 N.E.2d 876, 888 (2007), our supreme court invoked the rational juror standard and reasoned a *Zehr* violation cannot prejudice a defendant when the State's evidence against him is so overwhelming no rational jury would have acquitted him. *Glasper*, 234 Ill. 2d at 201, 917 N.E.2d at 418. *Glasper* ultimately concluded a Rule 431(b) violation does not require automatic reversal and is subject to harmless-error review. *Glasper*, 234 Ill. 2d at 201-02, 917 N.E.2d at 418. (We assume, because our supreme court engaged in harmless-error review, the defendant in *Glasper* preserved the error by objecting in the trial court.)

The First District has reviewed Rule 431(b) several times since its March 2007 amendment and has consistently held a trial court's violation of Rule 431(b) deprives a defendant of a substantial right and a fair trial, obviating the need for a harmless-error inquiry or determination of prejudice. See *People v. Anderson*, 389 Ill. App. 3d 1, 9, 904 N.E.2d 1113, 1121 (2009), *vacated*, 233 Ill. 2d 565, 914 N.E.2d 487 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal); *Graham*, 393 Ill. App. 3d at 276, 913 N.E.2d at 106; *Arredondo*, 394 Ill. App. 3d at 955, 916 N.E.2d at 1272.

Unlike the First District, the Fourth District has allowed for the harmless-error analysis when considering *Zehr* violations. In *People v. Stump*, 385 Ill. App. 3d 515, 521, 896 N.E.2d 904, 909 (2008), *vacated*, 233 Ill. 2d 592, 914 N.E.2d 490 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal), the trial court addressed all four *Zehr* principles but only questioned jurors on two of the principles. This court held that any error caused by the court's failure to fully comply with Rule 431(b) was harmless error because (1) the jurors were at least informed of all four principles during *voir dire* and (2) the evidence was overwhelming. *Stump*, 385 Ill. App. 3d at 522, 896 N.E.2d at 909. Similar to *Stump*, in *People v. Owens*, 394 Ill. App. 3d 147, 152, 914 N.E.2d 1280, 1284 (2009), the trial court addressed all four Rule 431(b) principles when addressing the entire venire. However, in *Owens*, the court failed to ask any questions of prospective jurors relating to any Rule 431(b) principles. This court distinguished *Owens* from *Stump*, finding the trial court committed plain error by failing to question prospective jurors on any of the principles. *Owens*, 394 Ill. App. 3d at 153-54, 914 N.E.2d at 1285.

In *People v. Blanton*, 396 Ill. App. 3d 230, 235 (2009), the trial court questioned the prospective jurors on three of the Rule 431(b) principles and allowed prospective jurors to respond. The court failed to inform and question jurors regarding the fourth principle that the defendant's decision not to testify cannot be held against him. *Blanton*, 396 Ill. App. 3d at 235. The defendant did not present evidence or testify in that case. *Blanton*, 396 Ill. App. 3d at 233. *Blanton* held the trial court committed plain error when it failed to question each prospective juror on the fourth Rule 431(b) principle, substantially affecting the fundamental fairness of the proceeding. *Blanton*, 396 Ill. App. 3d at 236.

In the present case, while we find the trial court committed error by failing to comply with Rule 431(b), we are guided by our supreme court's holding in *Glasper* that a *Zehr* violation does not require automatic reversal. *Glasper*, 234 Ill. 2d at 200, 917 N.E.2d at 418. We determine whether this case warrants reversal in light of *Blanton* and *Owens*.

Here, the court informed jurors of three of the four Rule 431(b) principles and questioned them about their understanding and acceptance of those principles, but failed to advise of or question the jury on the fourth principle. However, as defendant concedes in his brief, defense counsel rectified the situation by informing the prospective jurors of the fourth Rule 431(b) principle and questioning them as to their acceptance of it. In this regard, the present case is distinguishable from *Blanton*, where jurors were never apprised of the fourth

principle by anyone. Similarly, in *Owens*, the court failed to question the jurors as to any of the Rule 431(b) principles. As the jurors in the present case were questioned on all four principles, albeit by defense counsel on the fourth, the court's error does not amount to plain error.

We find further support for affirming the trial court in *Glasper*. There, our supreme court advised it would not hesitate to reverse a conviction if the facts showed the Rule 431(b) violation resulted in a biased jury. *Glasper*, 234 Ill. 2d at 200, 917 N.E.2d at 418. However, *Glasper* reasoned if no rational jury would acquit the defendant, a trial court's Rule 431(b) violation does not require reversal of the defendant's conviction. *Glasper*, 234 Ill. 2d at 202, 917 N.E.2d at 419.

Here, the State's case against defendant was such that no rational jury would have acquitted him. See *Glasper*, 234 Ill. 2d at 202, 917 N.E.2d at 419. Officer Chambers provided thorough testimony explaining the circumstances surrounding the aggravated battery. Further, defendant has not shown the trial's fundamental fairness was jeopardized by the court's error. Following closing arguments, the court instructed the jury on all four Rule 431(b) principles, and defendant does not show the jury acted with bias in reaching its verdict. Accordingly, we conclude the court's *voir dire* error did not rise to the level of plain error and did not prejudice defendant.

### B. Closing Arguments

■ Defendant argues the State improperly commented on defendant's decision not to testify and his failure to present evidence during closing arguments.

The statements at issue are as follows:

"What did the defendant do? Well, we have heard testimony from the officer and the officer testified, hasn't been refuted or questioned in any way, you haven't heard any other testimony to refute what the officer said, and that is that the defendant got out of the vehicle, turned around and saw the officer's squad car and proceeded to run.
\*\*\*
I want to kind of go over the testimony of the door detail because I think it is important because what the officer said about what happened next shows that what happened here was a deliberate intentional act. It was definitely a knowing act. There was no accident here. There hasn't been any one testify that it was an accident."

Defendant contends the State told the jury "no one" refuted Officer Chambers and "no one" testified that the door-slamming incident was an accident. Defendant's characterization is not entirely accurate.

The State actually said "you haven't heard any other testimony to refute what the officer said."

Improper remarks during closing argument are only reversible when they cause the defendant substantial prejudice and affect the defendant's right to an impartial and fair trial. *People v. Ward*, 371 Ill. App. 3d 382, 426, 862 N.E.2d 1102, 1144 (2007). When no witness besides defendant could provide evidence contrary to the State's case, the State may argue the evidence is uncontradicted but may not repeatedly tell the jury "no one" contradicted the State's evidence. *People v. Edgecombe*, 317 Ill. App. 3d 615, 620-21, 739 N.E.2d 914, 919-20 (2000). In *Edgecombe*, the State made the following references to the State's uncontradicted evidence:

> " 'There has been no evidence whatsoever from that witness stand that says $60 wasn't taken \*\*\*. No one said $60 wasn't taken from them \*\*\*'; 'There's no one that got up there that said anything different \*\*\*'; 'There's no one that got up there and said the defendant was just standing there'; and 'Is there any evidence that you heard that this guy was just there? Nobody told you that.' "
> *Edgecombe*, 317 Ill. App 3d at 621, 739 N.E.2d at 920.

The *Edgecombe* court found the repeated references to "no one" refuting the testimony "crossed the line" and were improper comments on the defendant's failure to testify. *Edgecombe*, 317 Ill. App 3d at 621, 739 N.E.2d at 920. Here, the State used the phrase "no one" once while describing the door-slamming incident. While the comment was improper, the error did not deny defendant a fair and impartial trial. The trial court corrected this error with the following jury instructions: "The defendant is not required to prove his innocence. The fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict." Thus, defendant suffered no prejudice because the jury knew the State was required to prove the elements of aggravated battery and it was to give no consideration to defendant's failure to testify.

### C. Twelve-Year Sentence

■ Defendant argues the trial court abused its discretion in imposing a 12-year sentence for his aggravated-battery conviction. Trial courts are given broad discretion in fashioning appropriate criminal sentences. *People v. Stacey*, 193 Ill. 2d 203, 209, 737 N.E.2d 626, 629 (2000). Absent an abuse of the court's discretion, we will not alter the sentence on review. *Stacey*, 193 Ill. 2d at 209-10, 737 N.E.2d at 629.

Here, defendant's aggravated-battery conviction was elevated to a Class 1 felony because defendant knew the victim was a peace officer (720 ILCS 5/12—4(e)(3) (West 2006)), rendering him eligible for a 4- to 15-year sentence (730 ILCS 5/5—8—1(a)(4) (West 2006)). Despite

defendant's stated remorse for his actions, the 12-year sentence was appropriate considering defendant's scant rehabilitative potential. Defendant's criminal record dates back to 1995 when at 18 years old he was first convicted of unlawful use of a weapon. Since then, defendant has been convicted of unlawful use of a weapon twice, once as a felon, manufacturing and delivering narcotics, criminal damage to property, assault, and numerous traffic violations. The court observed that at age 31, defendant had amassed 10 felony convictions. In 2003, defendant was given a seven-year prison term for delivery of a controlled substance. While on mandatory supervised release in 2007, defendant committed the offenses in the present case. In light of defendant's penchant for criminal activity, the trial court did not abuse its discretion in rendering the statutorily permissible 12-year sentence.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

APPLETON and McCULLOUGH, JJ., concur.