2018 IL App (2d) 180157-U
No. 2-18-0157
Order filed July 8, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-83 |
| PAUL E. D'AMICO a/k/a Paul E. Wheeler, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Presiding Justice Birkett and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    Held:   While the prosecution's remarks were improper, they did not rise to the level of plain error, nor were they so prejudicial that defense counsel's failure to object constituted ineffective assistance of counsel. Therefore, we affirm.

¶ 2    Following a jury trial, defendant, Paul E. D'Amico, a/k/a Paul E. Wheeler, was convicted of one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2004)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12-16 (West 2004)). Defendant appeals his convictions and maintains that the prosecution made improper comments

during closing argument which violated his fifth amendment right not to testify and improperly shifted the burden of proof to him. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant's jury trial began on April 17, 2017.

¶ 5      P.M., the victim, testified as follows. Defendant was a friend of P.M.'s mother. As a child, P.M. knew defendant by his nickname, "Smiley Paul." She spent the night at his home, a single-story white house, on two occasions. On the first occasion, her brother, defendant, and defendant's girlfriend spent the night with her. She remembered being put in timeout, where she fell asleep standing up in the corner. She recalled defendant had a son who was at the home on one of those occasions, but that he did not stay overnight.

¶ 6      The second occasion was sometime during the winter of 2005, when she was seven years old. That night only the defendant and his girlfriend stayed in the house with her. During the night defendant asked P.M. if she would like to come with him to plow snow. She agreed, and they drove to the home of defendant's boss to pick up a snowplow truck. While waiting for the snowplow truck to warm up, defendant asked her if she wanted to "fake drive" the truck. She told him yes and sat on defendant's lap, whereupon she felt defendant rubbing his penis on her. She felt uncomfortable and asked to sit back in the passenger seat. They then left the boss's house, and she fell asleep.

¶ 7      P.M. further testified that she woke up at the Chicago Street train station in Elgin, which she recognized because of a nearby J.J. Peppers convenience store. As she was waking up, defendant was hurrying to move his hand away from inside of her pants. She asked what he was doing, and he replied, "Nothing, just go back to sleep." P.M. said she freaked out and acted as though she was still sleeping, eventually falling in and out of sleep. She awoke again, to find

defendant touching her, with his right hand in her pants, and his fingers in her vagina. P.M. testified that it hurt and she was crying. Defendant then told her that no one would believe her, and P.M. asked him to stop. He did and drove them back to his home, whereupon she fell asleep on the couch. After that night P.M. did not spend any more time with the defendant.

¶ 8 P.M. testified that she did not immediately tell an adult about what happened because she was scared. However, P.M. did tell her cousin about what happened when she was around 10 years old. P.M. stated she later told her father and his wife about what happened when she was 11 years old, and she eventually told her mother, and a house mother at the Mooseheart boarding school named Brittany Young. P.M. stated while in high school, she told her principal about what had happened with the defendant. She testified that the reason she told her principal was that she felt very comfortable around her. She had not told other adults, because the people she had told before did not believe her.

¶ 9 P.M.'s mother, Melissa Gibbons, testified as follows. She had known defendant since childhood. When she was 16, she had a "friends with benefits" type relationship with the defendant, but as they grew older, they became just friends. In addition to P.M., Gibbons had a son, P.M.'s half-brother. Her son's father passed when he was two months old, so she had defendant and some of her other male friends act as male figures in his life. After defendant had taken P.M.'s brother on a few outings, P.M. wanted to go with her brother and defendant. Gibbons let P.M. spend time at defendant's house on two occasions when she was around six or seven years old, spending the night on one of those occasions. Gibbons could not recall where defendant lived beyond that it was a white ranch style home "out west" either in De Kalb or McHenry County. Afterward, Gibbons and P.M. saw defendant at the Sycamore Speedway. When P.M. saw defendant, "she didn't want to go anywhere near him." Gibbons first learned about what had

happened to P.M. after P.M. told her father who then told Gibbons. P.M. would have been about eight or nine years old. She then tried to take P.M. to the police station, but P.M. refused to get out of the car.

¶ 10    Defendant's mother, Barbara Skruggs, testified that her son had lived at two houses in De Kalb, Illinois, from 2003 to 2007. The first house was a single-story home with gray siding and maroon shutters located at Oakwood Drive. The second house was a brown two-story home with a deck on the back located at Ninth Street. Defendant did not live in a white house. Between 2003 and 2007, defendant lived with Jennie Gensky. Defendant had two daughters, one who was born in 1998 and another who was born in 2005. Defendant did not have a son.

¶ 11    In closing arguments, the State emphasized that P.M.'s testimony regarding what happened to her was unrebutted and argued that inconsistencies as to "little facts" did not matter in light of the unrebutted testimony as to the assault itself. In response, defense counsel argued that P.M. was not credible and that the State had failed to produce any medical, physical, or forensic evidence. Defense counsel placed particular emphasis on inconsistencies in the testimony regarding the location and color of defendant's home, and the fact that defendant did not have a son despite P.M.'s testimony that defendant's son was at his home the night the assault took place. In rebuttal the State argued that P.M. had testified credibly as to what happened, arguing that defendant did not have an ongoing presence in her life and that she had no motive to make false allegations against him, and emphasizing how P.M.'s parents and teachers had failed to address her claims when she first spoke to them. At no point during the State's closing argument or rebuttal did defense counsel make any objections. After deliberation, the jury found defendant guilty on both counts, and defendant was ultimately given consecutive sentences of six years' imprisonment on

the predatory criminal sexual assault count and three years' imprisonment on the aggravated criminal sexual abuse count.

¶ 12     Defendant filed a posttrial motion for mistrial and for judgment of acquittal notwithstanding the verdict. In his motion for mistrial, defendant argued *inter alia* that the statements made in the prosecution's closing arguments regarding the unrebutted nature of P.M.'s testimony constituted a violation of his fifth amendment right against self-incrimination and improperly shifted the burden onto defendant to prove his innocence.

¶ 13     The trial court denied defendant's motion, finding that the motion was untimely due to defense counsel's failure to object at trial. The trial court went on to say that even if defense counsel had objected, the comments were fair in light of the evidence.

¶ 14     Defendant timely appealed.

¶ 15                              II. ANALYSIS

¶ 16     On appeal, defendant contends that the prosecution made improper comments during its closing arguments which drew attention to defendant's decision not to testify, thus shifting the burden of proof onto defendant in violation of his fifth amendment rights.

¶ 17                     A. Forfeiture and Standard of Review

¶ 18     Defendant acknowledges that by failing to object to the prosecution's remarks at trial, he now faces a forfeiture problem. "To preserve an issue for review, a defendant must object at trial and raise the alleged error in a written posttrial motion." *People v. Reese*, 2017 IL 120011, ¶ 60. The failure to raise an issue at trial deprives the trial court of an opportunity to correct the error immediately, wasting time and judicial resources. *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009). Defendant maintains that although his trial counsel failed to object to the prosecution's statements at trial, he did raise them in a posttrial motion, and the issue was "extensively litigated." Further,

defendant argues that reviewing courts have the power to relax the forfeiture rule and consider issues on the merits. While it is true that in the past reviewing courts have relaxed the forfeiture rule (see *People v. Segoviano*, 189 Ill. 2d 228, 244 (2000); *People v. McCarty*, 223 Ill. 2d 109, 142 (2006)), we see no reason to do so in this instance. Although defendant's trial counsel raised the issue in a posttrial motion, that is a bit like closing the barn door after the horse has bolted. Instead of being able to address and correct an error at trial, the only option left at that point was to have a new trial. While the trial court in this instance stated that it would have overruled such an objection, it is nevertheless a practice which should be discouraged. *McLaurin*, 235 Ill. 2d at 488 (The failure to raise contemporaneous objections can be excused only under "extraordinary circumstances.").

¶ 19    In the alternative, defendant argues that this court should review his appeal as a claim for ineffective assistance of counsel, or for plain error. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's representation "fell below an objective standard of reasonableness" and that such a shortcoming was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687-94 (1984); see *People v. Albanese,* 104 Ill. 2d 504, 526-27 (1984) (adopting *Strickland*). Whereas the plain error doctrine requires either:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the

judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill.

2d 551, 565 (2007)

Under either an ineffective assistance of counsel or plain error claim, the defendant is required to

demonstrate that an error occurred. Likewise, a claim for ineffective assistance of counsel or plain

error under the closely-balanced-evidence prong requires a showing of prejudice to the defendant.

*People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47.

¶ 20                                           B. Improper Comments

¶ 21      A criminal defendant has a constitutional right not to testify as a witness on his own behalf,

and as such a prosecutor is prohibited from directly or indirectly commenting on the defendant's

failure to take the stand in his own defense. *People v. Kliner*, 185 Ill. 2d 81, 156 (1998). However,

prosecutors are afforded wide latitude in closing argument (*People v. Wheeler*, 226 Ill. 2d 92, 123,

(2007)), and prosecutors can describe the State's evidence as uncontradicted provided that

the comments are not intended or calculated to direct the jury's attention to the defendant's failure

to testify. *Kliner*, 185 Ill. 2d at 156-57.

¶ 22      When reviewing closing arguments, remarks must be considered in context, taking into

account the entire closing arguments of both the prosecutor and defense attorney. *People v. Anaya*,

2017 IL App (1st) 150074, ¶ 62. "Statements will not be held improper if they were provoked or

invited by the defense counsel's argument." *People v. Glasper*, 234 Ill. 2d 173, 204 (2009).

¶ 23                                           C. Closing Argument

¶ 24      Defendant maintains that comments made by the prosecution during closing argument were

improper. Defendant argues that the prosecution's repeated statements that "no one" contradicted

P.M.'s testimony as to the assault itself and the repeated use of the words unrebutted, unimpeached,

and uncontradicted to describe P.M.'s testimony improperly drew attention to the Defendant's

decision not to testify, especially in light of the fact that, according to P.M.'s testimony, she was alone in the truck with him and therefore, the only other possible witness to the assault itself was the defendant. Specifically, defendant takes issue with the following highlighted remarks.

"Not believable. The statements don't add up. Impossible. Inaccurate. Those are the statements that the defense used to sum up our case yesterday, but I think it's important to break those statements down. Is [P.M]'s *unrebutted* statement unbelievable? Does it really not add up? *No one came through that door yesterday to impeach her. No one.* Is it impossible? Is it impossible to believe that this defendant who had access to [P.M.], who had control over a situation, to get her alone, alone enough and isolated enough to be assaulted? Is it impossible? Is it inaccurate?

\* \* \*

The big things; what happened, what the defendant did, those matter, *and no one came in to say that it didn't happen, and no one came in to impeach [P.M.].*

\* \* \*

What do we have here? We have a credible *unimpeached statement* from an 18-year old young woman detailing the disgusting acts that were committed against her when she was just 7 years old.

\* \* \*

*No one* -- I think it's important that you pay attention here and focus on this. *There is no one who came in yesterday to tell you that this didn't happen, yesterday or today. No one came in to say, you know what, [P.M.], that didn't happen*; she wasn't there; she doesn't even know the defendant. None of that happened. Okay? So you have to think about that. The testimony that she gave under oath is *uncontradicted* and *she's unimpeached* as to the

events that occurred that day. So ask yourselves: Is it impossible? Is it inaccurate? Do her statements not add up? No, it's not impossible; her statements aren't inaccurate, and her statements do add up." (Emphases added.)

¶ 25    In support of his contention that the prosecution's comments that "no one" impeached P.M.'s testimony, the defendant cites to *People v. Edgecombe*, 317 Ill. App. 3d 615, 739 (2000), and *People v. Chester*, 396 Ill. App. 3d 1067 (2010), *appeal denied, judgment vacated,* 239 Ill. 2d 561 (2011).[1] In *Edgecombe*, the court found that the prosecutor's repeated statements that "no one" contradicted certain elements of a robbery victim's testimony constituted an indirect reference to the defendant's decision not to testify. 317 Ill. App. 3d at 621. Likewise, in *Chester* the court found that the prosecutor's remark that "no one" testified that defendant slamming a door closed on the arresting officer's arm was accidental was improper. 409 Ill. App. 3d 442, 450 (2011). However, the *Chester* court found that this error was corrected in jury instructions. *Id.*

¶ 26    In support of his contention that the State's use of the words, "unrebutted," "unimpeached," and "uncontradicted," to describe P.M.'s testimony was improper, defendant cites to *People v. Derr*, 316 Ill. App. 3d 272 (2000); *People v. Connolly*, 186 Ill. App. 3d 429 (1989); and *People v. Escobar*, 77 Ill. App. 3d 169 (1979). In *Derr*, the prosecutor stated that "[Defendant] sure didn't prove his innocence" in addition to remarking that the evidence was unrebutted or uncontradicted six times. 316 Ill. App. 3d at 275-76. In *Escobar*, the prosecution described the evidence as "uncontradicted and undenied" six times, with the reviewing court noting that the use of

---

[1] As the State properly notes, *Chester* has been vacated, but on remand the Fourth District's analysis regarding closing arguments was essentially the same. See *People v. Chester*, 409 Ill. App. 3d 442 (2011).

"undenied" points more directly at the defendant, since one denies an accusation. 77 Ill. App. 3d at 177-78. Likewise, in *Connolly* the prosecution characterized the evidence as "undisputed, uncontradicted, or undenied" 18 times. 186 Ill. App. 3d at 436. Notably in each of these cases the prosecutor made additional impermissible commentary beyond saying that evidence was uncontradicted. In the instant case the prosecution used the words "uncontradicted, unrebutted, and unimpeached" fewer times than in *Derr*, *Escobar*, or *Connolly*. Also, the prosecution did not refer to the evidence as "undenied" or state that the defendant failed to "prove his innocence." That being said, defendant maintains that when taken together the prosecution's remarks had a cumulative effect.

¶ 27    In response, the State argues that the prosecution's comments did not constitute error and that prosecutors are given wide latitude in closing arguments. With regard to specific statements, the State argues that the prosecution's remarks were a response to defendant's opening statement in which defense counsel stated that the State's case would have "big holes missing from it, inaccuracies and even impossibilities," listing various kinds of evidence the state would not be presenting including testimony regarding the exact date the assault took place, testimony regarding who defendant's boss was and where he lived, DNA or medical evidence, testimony from a psychiatrist, or testimony from an officer who conducted a contemporaneous investigation. The State maintains that its comments were an appropriate response to defendant, that its characterization of P.M.'s testimony as unrebutted as to the major points was a fair and proper characterization not calculated to draw attention to defendant's decision not to testify.

¶ 28    While the State may properly characterize evidence as unimpeached or uncontradicted, even if the defendant is the only person who could have contradicted the evidence, the State cannot express any thought as to who could have done the contradicting (*i.e.*, the defendant). *People v.*

*Keene*, 169 Ill. 2d 1, 21 (1995). Taken as whole, and even considered in response to defendant's opening statement, we must conclude that the prosecution's remarks in closing argument had the effect of drawing attention to the defendant's decision not to testify. As in *Edgecombe* the State repeatedly stated that "no one" impeached P.M. even going so far as to ask the jury to pay special attention to that point. 317 Ill. App. 3d at 621. Nothing in the defendant's opening statement specifically invited that commentary. That along with the repeated statements that her testimony was "unrebutted", "unimpeached", and "uncontradicted" leads us to conclude that the prosecution's remarks constitute error.

¶ 29                                D. Rebuttal Argument

¶ 30    Defendant also takes umbrage with the following highlighted remark made during the State's rebuttal.

> "*It would be nice, it would be nice to present you with other witnesses and other evidence that this happened. It would be nice to have another witness to the actual event itself*; but the whole reason this crime was committed is because the defendant isolated [P.M.], because she was vulnerable to this type of crime happening to her due to her life circumstances that you heard about." (Emphasis added.)

The State maintains that this remark was a direct response to defendant's closing argument. We agree.

¶ 31    In closing the defense counsel made the following remarks:

> "It would be nice to have medical evidence, forensic evidence, physical evidence, but there is none.

                                    * * *

Well, we didn't hear anything from a psychologist, a psychiatrist, anyone who would give

insight of why someone would say something that took place so long ago is now making

disclosures ten years later. That would be nice to know.

* * *

Well, wouldn't it be nice to have someone who actually interviewed [P.M.] and maybe

said, 'You know what, this is why this possibly took place.'

* * *

As far as him being a snow plow worker, maybe the State got W-2's. Yeah, he worked for

this company. They actually do do snow plow work. Mr. Wheeler was employed with

them. We don't have that. It would be nice to know."

In light of these statements and defendant's closing argument as a whole, the State's rebuttal was

a proper invited response explaining why the State did not have the type of evidence enumerated

by defense counsel. *Glasper*, 234 Ill. 2d at 204.

¶ 32                                                E. Plain Error

¶ 33       Having determined that the remarks in prosecution's closing argument were error, we turn

to whether that error constitutes plain error. Defendant maintains that the prosecution's comments

constitute plain error under both the closely balanced and serious error prongs. Error under the

second prong is equivalent to a structural error, an error so serious that it erodes the integrity of

the judicial process and undermines the fairness of the defendant's trial. *People v. Thompson*, 238

Ill. 2d 598, 613-14 (2010). Such errors include but are not limited to "(1) a complete denial of

counsel, (2) a biased trial judge, (3) racial discrimination in the selection of the grand jury, (4) a

denial of self-representation at trial, (5) a denial of a public trial, and (6) a defective reasonable-

doubt instruction." *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 90. While the prosecution's

comments constituted error, they do not rise to the level of seriousness required by the second prong. See *Glasper*, 234 Ill. 2d at 215 (improper closing remark did not constitute plain error under the second prong).

¶ 34    We now turn to the first prong of the plain error analysis, whether the evidence was closely balanced. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. This includes "an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 35    Initially we note that the jury was instructed at the close of argument that the defendant was not required to prove his innocence and that his decision not to testify was not to be considered in reaching their verdict. Defendant maintains that given the cumulative effect of the prosecution's remarks the error was not cured by the jury instruction. While jury instructions are not a panacea against prosecutorial misconduct, they are an ameliorating factor. See *Derr*, 316 Ill. App. 3d at 276 (despite jury instructions, cumulative effect of prosecutor's comments denied defendant a fair trial); but see *Chester*, 409 Ill. App. 3d at 450 (jury instructions cured error in prosecutor's comments).

¶ 36    With regard to the charged offenses, the evidence consists of P.M.'s testimony. This testimony was corroborated in part by her mother's testimony, in that her mother testified that P.M. had visited defendant's home and stayed the night, that when P.M. saw defendant later at the Sycamore Speedway she did not want to go near him, and that P.M. had told her mother and father about the assault years later. The only evidence presented by defendant was the testimony of his mother rebutting some aspects of P.M.'s testimony, namely that defendant did not have a son and

that from 2003 to 2007 the defendant lived in a gray house and a brown house, but not in a white house. Although there were inconsistencies and gaps in the testimony of P.M. and her mother (*e.g.*, the location and description of the defendant's home, who else spent the night at defendant's home, and exactly how old P.M. was) these are the types of gaps one would expect from the passage of ten years, and they do not contradict the material testimony regarding the assault itself. Additionally, defendant did not have a continuing presence in P.M.'s life and the evidence suggests no credible motive for her to lie.[2]

¶ 37    In support of his contention that the evidence was closely balanced, defendant again cites to *Edgecombe*. While *Edgecombe* did find that the evidence was closely balanced because the case hinged on the victim's testimony, there was also no corroborating evidence and the defendant's conviction was based on a theory of accountability. *Edgecombe*, 317 Ill. App. 3d at 619. Subsequent cases have found evidence to be not closely balanced when there is evidence corroborating the victim's testimony. See, *e.g.*, *People v. Olla*, 2018 IL App (2d) 160118 ¶ 38 (evidence not close where victim's testimony was supported by corroborating evidence and defendant denied victim's allegations); *People v. Effinger*, 2016 IL App (3d) 140203 ¶ 26 (evidence not close where circumstantial evidence supported victim's version of events and defense presented no evidence); *People v. Lopez*, 2012 IL App (1st) 101395 ¶ 90 (evidence not close where circumstantial evidence supported victim's testimony while defendant's entire version of events "strained credulity").

---

[2] The defense appeared to suggest, but did explicitly state, that P.M. may have been motivated by the defendant placing her in timeout during her first visit.

¶ 38    This case closely resembles the facts in *Olla*, a recent Second District case, which involved a young girl being sexually assaulted by her stepfather. *Id.* ¶ 3. At trial, the victim testified that the defendant had been molesting her since she was nine years old. *Id.* ¶ 5. She eventually told her mother and spoke to an investigator about what happened, both of whom testified about what they had been told. *Id.* ¶ 3. The victim's brother also testified as to an incident where the defendant was lying with his "frontside" facing the victim's "backside." *Id.* ¶ 16. At the time of trial, the victim was 13. *Id.* ¶ 2. There were inconsistencies in her testimony, and she recalled details which she had previously not remembered, like what television show was on while one of the incidents occurred. *Id.* ¶¶ 5, 36. Unlike the instant case, the defendant in *Olla* took the stand and specifically denied the allegations against him. *Id.* ¶ 21 Despite this, we still found that the evidence was not closely balanced. *Id.* ¶ 38. As such, because P.M.'s testimony was corroborated by her mother's testimony, the inconsistencies in their testimony were minor, and the only evidence presented by the defendant was his mother's rebuttal testimony as to the number of defendant's children and the color of his house, we conclude that the evidence was not closely balanced.

¶ 39                    F. Ineffective Assistance of Counsel

¶ 40    The analysis applicable to the prejudice prong of the *Strickland* inquiry is similar to the analysis applicable to the first prong of the plain-error inquiry. *People v. Holt*, 2019 IL App (3d) 160504-B, ¶ 47. For the same reasons that we determined that the evidence in the instant case was not closely balanced, we also conclude that the defendant has failed to satisfy the prejudice prong of the *Strickland* test, because he cannot show that there is a reasonable likelihood that but for counsel's failure to object to the prosecution's improper remarks, the outcome of the trial would have been different. *Strickland* 466 U.S. at 694.

¶ 41                            III. CONCLUSION

¶ 42    While certain comments by the prosecution constituted error, the error was not so serious nor was evidence so closely balanced as to warrant reversal under the plain error doctrine. Likewise, there was not a reasonable probability that but for trial counsel's failure to object to prosecution's remarks, the result of the proceeding would have been different, such that defendant failed to establish ineffective assistance of counsel. Therefore, we affirm the judgment of the circuit court of Kane County.

¶ 43    Affirmed.