**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250009-U

Order filed May 26, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0009 Circuit No. 24-DV-323 |
| | ) | |
| TRAIVES R. JORDAN, | ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Davenport and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) The evidence at trial supported a reasonable inference that defendant knowingly committed battery. (2) Counsel's decision not to request additional jury instructions did not constitute ineffective assistance. (3) The circuit court substantially complied with the rule regarding *voir dire* examination.

¶ 2     Defendant, Traives R. Jordan, appeals his convictions, arguing that: (1) the evidence was insufficient to sustain his battery conviction, (2) his trial counsel was ineffective for failing to request jury instructions that defined intent and knowledge, and (3) the Du Page County circuit

court erred by failing to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). We affirm.

¶ 3                                I. BACKGROUND

¶ 4        Defendant was charged with, *inter alia*, resisting a peace officer (720 ILCS 5/31-1(a)(1) (West 2024)) and two counts of battery (*id.* § 12-3(a)(1), (2)). Relevant to this appeal, the battery counts alleged that defendant knowingly and without legal justification struck Naperville police officer Jairo Perez about the face, making physical contact of an insulting or provoking nature and causing bodily harm.

¶ 5        During jury selection,[1] the court asked if any prospective jurors held views that would make them reluctant to serve as a member of the jury. One prospective juror responded in the affirmative, stating that it would be impossible to know if a witness was testifying truthfully. After indicating which factors can be considered when determining witness credibility, the court explained the State's burden to present evidence and prove defendant's guilt beyond a reasonable doubt. The court ended its collective juror examination shortly thereafter and began conducting individual inquiries, which included questioning regarding the principles enumerated in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). The court asked the potential jurors whether they understood and accepted that defendant is presumed innocent and that he is not required to offer any evidence on his own behalf. The prospective jurors individually responded affirmatively to both questions. The court then inquired as follows: "The Defendant cannot be convicted unless proved guilty beyond a reasonable doubt. So do you understand and accept that the defendant cannot be convicted unless proved guilty beyond a reasonable doubt?" Each prospective jurors, in turn, answered affirmatively. The court presented the remaining Rule 431(b) principle and then

---

[1]A six-person jury was impaneled at defendant's request.

allowed the State to question the potential jurors regarding their ability to find defendant guilty if the State were to satisfy its burden of proof.

¶ 6     The evidence presented by the State at trial, which included Perez's testimony and body camera video footage, demonstrated that on the date of the incident, Perez and Officer Jarzabkowski were effectuating defendant's arrest as part of a domestic violence investigation. After informing defendant that he was under arrest for domestic battery,[2] Perez instructed him to turn around and place his hands behind his back. Defendant did not comply, backed away, and tensed up his arms as Perez and Jarzabkowski each grabbed one of his wrists. Defendant kept his arms rigid as he struggled against the officers and started to yell. Perez repeated his commands and warned defendant that if he did not stop tensing up, he would be forced to the ground. After defendant was informed again that he was being arrested for domestic battery, he exclaimed, "I did not hit her, Bro! She hit me!" Defendant started to run forward, and Perez attempted to push him to the ground. Perez testified that defendant spun around with his arms swinging and hit him in the eye. Perez could not recall which of defendant's arms struck him. Perez stated he experienced pain, blurred vision, and could not see for approximately 10 seconds after being hit. The body camera video does not show defendant striking Perez, but Perez testified that an audible thump can be heard when defendant hit him. Perez then forced defendant to the ground, where he continued to resist by kicking and pushing. Perez was eventually able to place defendant in handcuffs after warning him that he would be sprayed with pepper spray if he failed to comply.

¶ 7     Defendant testified that Perez and Jarzabkowski spoke with him for approximately 10 minutes before they placed him under arrest and did not tell him why he was being arrested. Defendant stated that the officers grabbed his wrists before he was able to place his hands behind

_____

[2]The domestic battery charges that prompted defendant's arrest were dismissed prior to trial.

3

his back, and he denied hitting Perez. During closing arguments, defense counsel argued that the State had not established defendant had knowingly committed a battery because there was no evidence that defendant "specifically took steps to aim and hit [Perez] in the face." Defense counsel then asserted to the jury twice that there was no proof defendant had struck Perez.

¶ 8 The court provided instructions to the jury prior to deliberations, which included an instruction that the State had to prove beyond a reasonable doubt that defendant knowingly made physical contact of an insulting or provoking nature with Perez to sustain a battery conviction based on physical contact. Relevant to the issues presented on appeal, defense counsel did not request jury instructions defining "knowledge" or "intent," and no such instruction was provided.

¶ 9 The jury found defendant guilty of resisting a peace officer and battery premised on physical contact and not guilty of battery causing bodily harm. Defendant was sentenced to 12 months of conditional discharge. Defendant filed a motion for a new trial and judgment notwithstanding the verdict, arguing, *inter alia*, that the State failed to prove his guilt beyond a reasonable doubt. The court denied the motion.

¶ 10 II. ANALYSIS

¶ 11 A. Sufficiency of Evidence

¶ 12 On appeal, defendant first argues that the evidence was insufficient to sustain his battery conviction because the State failed to prove he intentionally or knowingly struck Perez in the face. When the sufficiency of the evidence is challenged, the reviewing court must determine, after viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Harvey*, 2024 IL 129357, ¶ 19. It is not our function to retry defendant, and we will not substitute our judgment for that of the trier of fact on issues involving the weight of the evidence or the

4

credibility of witnesses. *People v. Jones*, 2023 IL 127810, ¶ 28. We will not reverse a criminal conviction unless "the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Village of Lincolnshire v. Olvera*, 2025 IL 130775, ¶ 34.

¶ 13        To sustain defendant's battery conviction, the State needed to prove defendant knowingly made physical contact of an insulting or provoking nature with Perez. See 720 ILCS 5/12-3(a)(2) (West 2024). An action is performed knowingly when defendant is consciously aware that the resulting offense is practically certain to be caused by his conduct. *Id.* § 4-5(b). However, defendant need not intend the specific consequence that resulted from his conduct. *People v. Ford*, 2015 IL App (3d) 130810, ¶ 38. In committing a wrongful act, a defendant is responsible for any unintended wrong that occurs as a natural and probable consequence of his conduct. *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 44. Circumstantial evidence is sufficient to demonstrate knowledge and a reasonable inference that a defendant was consciously aware of causing a practically certain result may be established through defendant's actions and the surrounding circumstances. *People v. Trajano*, 2018 IL App (2d) 160322, ¶ 24. Defendant does not contest that he struck Perez. Rather, defendant asserts that the evidence demonstrated he was not consciously aware his conduct was practically certain to result in striking Perez because he did not intentionally aim at Perez and he did not hit Jarzabkowski despite spinning toward him first before making physical contact with Perez.

¶ 14        Here, the evidence established that after defendant became agitated in response to his imminent arrest, he refused to comply with Perez's instructions and physically resisted being handcuffed. As defendant is presumed to intend the natural and probable consequences of his own deliberate act, it is reasonable to infer he was consciously aware that struggling against the officers

and swinging his arms while spinning to forcibly break free from their grasp would almost certainly result in some type of insulting or provoking physical contact with at least one of them. See *People v. Phillips*, 392 Ill. App. 3d 243, 259 (2009) (requisite mental state for battery was reasonably inferred where defendant swung his arms, hitting an officer in the face after refusing to comply with an order to return to his cell); *People v. Conway*, 2021 IL App (1st) 190951-U, ¶ 23 (reasonable inference of knowledge where defendant failed to comply with commands to stop resisting, flailed his arms, and struggled with officers). It is irrelevant that defendant did not purposefully aim at Perez prior to striking him, as the act need not be premeditated or malicious to satisfy the element of knowledge. See *People v. Rickman*, 73 Ill. App. 3d 755, 759-60 (1979). Thus, when viewed in the light most favorable to the State, the evidence was sufficient for the jury to conclude that defendant knowingly struck Perez.

¶ 15                    B. Ineffective Assistance of Counsel

¶ 16       Next, defendant contends that counsel provided ineffective assistance by failing to tender jury instructions defining the mental states of intent and knowledge under Illinois Pattern Jury Instructions, Criminal, Nos. 5.01A and 5.01B (approved Oct. 28, 2016) (hereinafter IPI Criminal Nos. 5.01A and 5.01B). To succeed on a claim of ineffective assistance, a defendant must show both that counsel's performance fell below an objective standard of reasonableness and that absent the deficient performance, there is a reasonable probability the outcome of the proceeding would have been different. *People v. Jackson*, 2020 IL 124112, ¶ 90. As a question of law, whether counsel's performance constitutes ineffective assistance is reviewed *de novo*. *People v. Yankaway*, 2025 IL 130207, ¶ 59.

¶ 17       A defendant must overcome the strong presumption that counsel's conduct was the product of sound trial strategy to establish deficient performance. *Strickland v. Washington*, 466 U.S. 668,

6

689 (1984). Reviewing courts are highly deferential to counsel's judgment regarding matters of trial strategy, and the reasonableness of the challenged action is assessed from counsel's perspective considering the totality of the circumstances. *People v. Bell*, 2021 IL App (1st) 190366, ¶ 63. The decision regarding what jury instructions to offer is a matter of trial strategy that is generally immune from ineffective assistance claims unless the failure to request a particular instruction "was so critical to the defense that its omission denied the accused the right to a fair trial." *People v. Minniefield*, 2014 IL App (1st) 130535, ¶ 77.

¶ 18    Absent a specific jury request, it is not necessary to provide instructions defining "knowingly" and "intent" because these terms have a plain meaning within the jury's common knowledge. *People v. Sperry*, 2020 IL App (2d) 180296, ¶ 15; *People v. Powell*, 159 Ill. App. 3d 1005, 1013 (1987). Where, as here, there was no request from the jury to define these terms and there is no indication from the record that the jury manifested any doubt or confusion regarding the meaning of such terms, defendant cannot establish that counsel was deficient for failing to request IPI Criminal Nos. 5.01A and 5.01B. See *People v. Elizondo*, 2021 IL App (1st) 161699, ¶ 95.

¶ 19    In coming to this conclusion, we reject defendant's unsupported contention that without the definition instructions, the jury might have misconstrued the term "knowingly" to "encompass[ ] conduct the defendant knew he had committed accidently" as there is nothing in the record to suggest that the jury did not understand the plain meaning of the term. Furthermore, defendant cannot show that counsel's decision to forgo instructions that would have ostensibly informed the jury that the term "knowingly" excluded accidental conduct was not strategic. At trial, counsel repeatedly emphasized during closing arguments that there was no evidence defendant had struck Perez and defendant unequivocally denied hitting Perez during his testimony.

7

Thus, it was objectively reasonable for counsel to refrain from further instructing the jury to define the mental state required to convict defendant of the offense considering the defense's theory was that defendant had not committed the offense at all. Accordingly, defendant cannot prevail on his ineffective assistance claim. See *id.* (failure to demonstrate counsel's performance was deficient is fatal to a claim of ineffective assistance).

¶ 20                                    C. Rule 431(b)

¶ 21        Finally, defendant argues that the court failed to properly instruct prospective jurors during *voir dire* on the four principles of Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). At the outset, defendant acknowledges that he has forfeited the issue, as he failed to object to the alleged error and subsequently failed to raise it in a posttrial motion. To overcome this forfeiture, defendant requests plain error review. The plain error rule permits consideration of an unpreserved claim of error

> "when (1) a clear or obvious error occurred and the evidence is so closely
> balanced that the error alone threatened to tip the scales of justice against
> the defendant, regardless of the seriousness of the error, or (2) a clear or
> obvious error occurred and that error is so serious that it affected the fairness
> of the defendant's trial and challenged the integrity of the judicial process,
> regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill.
> 2d 551, 565 (2007).

The first step in plain error analysis is to determine if a clear and obvious error occurred. *Id.*

¶ 22        Rule 431(b) requires the circuit court to ask whether prospective jurors understand and accept four essential principles of criminal law derived from *People v. Zehr*, 103 Ill. 2d 472, 477 (1984); Ill. S. Ct. R. 431, Committee Comments (rev. July 1, 2012). One of those principles is the

8

proposition that a defendant "must be proved guilty beyond a reasonable doubt." *Zehr*, 103 Ill. 2d at 477. Rule 431(b) states this same principle from *Zehr* as follows: "that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 23       Defendant contends that the circuit court misstated this principle in violation of Rule 431(b) because it failed to specify that it was the State's burden to prove defendant's guilt beyond a reasonable doubt. Defendant argues that strict compliance with Rule 431(b) requires that the court must not deviate from the precise language of the rule when advising the jury of the *Zehr* principles, citing *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 35.

¶ 24       Defendant's reliance on *McGuire* is misguided. In *McGuire*, the Fourth District concluded that the defendant's claim of error was precluded because defense counsel had acquiesced to the court's improper questioning as to whether the jurors "disagreed" with the *Zehr* principles rather than ask if they understood or accepted them as required under Rule 431(b). *Id.* ¶¶ 31-32. Notably, the court in *McGuire* had no occasion to consider whether a verbatim recitation of the principles was required for compliance and is therefore inapplicable here.

¶ 25       Contrary to defendant's contention, our supreme court has determined that "the plain language of [Rule 431(b)] *** does not require the court to explain the principles to the jurors in any particular fashion." *People v. Birge*, 2021 IL 125644, ¶ 34. Accordingly, a verbatim recitation of the principle is not required to satisfy the requirements of Rule 431(b). See *People v. Kidd*, 2014 IL App (1st) 112854, ¶ 36; *People v. Chester*, 409 Ill. App. 3d 442, 447 (2011); *People v. Atherton*, 406 Ill. App. 3d 598, 611 (2010).

¶ 26       Here, the record shows that, when providing the Rule 431(b) principles, the circuit court echoed the language of the burden of proof principle as stated in *Zehr*, which does not reference

the State. See *Zehr*, 103 Ill. 2d at 477. Although the court did not explicitly mention the State when it provided the principle, the prospective jurors were already apprised of the State's burden as they had just been instructed twice that the onus was on the State to prove defendant's guilt. Moreover, there is nothing in the record to suggest that the jurors were confused by the court's presentation of the principle and the State subsequently asked additional *voir dire* questions that further emphasized it bore the burden of proof. See *Birge*, 2021 IL 125644, ¶ 41. Therefore, we find no error, as the court sufficiently conveyed the substance of the challenged *Zehr* principle in compliance with Rule 431(b). See *People v. Peters*, 2018 IL App (2d) 150650, ¶¶ 35-36 (phrasing of Rule 431(b) principles that deviate from the statutory language is not improper if consistent with *Zehr*).

¶ 27                                III. CONCLUSION

¶ 28        The judgment of the circuit court of Du Page County is affirmed.

¶ 29        Affirmed.